No. 15-1973

IN THE

# United States Court of Appeals for the Federal Circuit

IN RE: STEPHEN O. LEMAY, MICHAEL MATAS,
TIMOTHY P. OMERNICK, RICHARD WILLIAMSON,
IMRAN CHAUDHRI, CHARLES J. PISULA AND
MARCEL VAN OS

On Appeal from the
United States Patent and Trademark Office
Patent Trial and Appeal Board No. 2013-005333
(Serial No. 11/968,067)

## BRIEF FOR STEPHEN O. LEMAY, MICHAEL MATAS, TIMOTHY P. OMERNICK, RICHARD WILLIAMSON, IMRAN CHAUDHRI, CHARLES J. PISULA AND MARCEL VAN OS

Peter J. Yim
Brian B. Ho
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000

Cathy C. Shyong
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd.
Menlo Park, CA 94025
(650) 614-7400

Mark S. Davies
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

E. Joshua Rosenkranz
Marc R. Shapiro
Sarah M. Sternlieb
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Counsel for Appellants*

Patent Application No. 11/968,067 (claim 1)

1.   A method, comprising:

at a portable electronic device with a touch screen display:

> displaying, on the touch screen display of the portable electronic device, a first list of information about online video items in a plurality of lists of information about online video items;
>
> displaying, on the touch screen display of the portable electronic device, a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;
>
> in response to detecting a moving finger gesture on the first list of information about online video items, scrolling the first list of information about online video items on the touch screen display of the portable electronic device;
>
> in response to detecting a tap gesture on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:
>
>> initiating a request for the particular online video item from a remote computer,
>>
>> receiving the particular online video item, and
>>
>> playing the particular online video item;
>
> in response to detecting a finger gesture on a second portion of the row in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, displaying, on the touch screen display of the portable electronic device, additional information about the particular online video item; and
>
> in response to detecting a finger gesture on a respective icon in the plurality of icons, displaying, on the touch screen display of the portable electronic device, a corresponding list of information about online video items. (A15-16)

# CERTIFICATE OF INTEREST

Counsel for appellants certify the following:

1.    The full name of every party or amicus represented by me is: Stephen O. Lemay, Michael Matas, Timothy P. Omernick, Richard Williamson, Imran Chaudhri, Charles J. Pisula, Marcel Van Os.

2.    Apple Inc. is the name of the real party in interest.

3.    Apple Inc. has no parent corporation.  No publicly held company owns 10 percent or more of Apple Inc.'s stock.

4.    The following law firms and partners or associates appeared for Apple Inc. in the trial court or agency or are expected to appear in this Court:

ORRICK, HERRINGTON & SUTCLIFFE LLP:

    E. Joshua Rosenkranz
    Mark S. Davies
    Marc R. Shapiro
    Christopher J. Cariello
    Don Daybell
    Cathy C. Shyong
    Sarah M. Sternlieb

MORRISON & FOERSTER LLP

    Mehran Arjomand
    Jonathan Bockman

Alex Chartove
Euborn Chiu
Joshua Crawford
Christopher Eide
David Fehrman
James Frei
Christopher Gloria
Brian Ho
Matthew Hollister
Matthew Kreeger
Glenn Kubota
Parker Kuhl
Skyler Lund
Bradley Meier (no longer with firm)
Randy Omid
Catherine Polizzi
Nathan Vogler
Jennifer White
Boyoung Yeum
Peter Yim

MORGAN, LEWIS & BOCKIUS LLP

Robert B. Beyers
Gary S. Williams

APPLE INC.

Chi-Hsin Chang
Sanjay Gadkari
Arlen Hartounian
Susan Heminger
Quin Hoellwarth
Ming-Yuh Hsu
Lawrence Lu
Joseph McNamara (no longer with Apple)
Jeffrey Myers
Milan Patel (no longer with Apple)

Cameron Pilling
Anand Sethuraman
Ali Shah
Jason Skinder
Joseph Sosinski (no longer with Apple)
Edward Steakley
Richard Wohld


Date:  November 2, 2015          ORRICK, HERRINGTON & SUTCLIFFE LLP

                                 */s/ Mark S. Davies*
                                 Mark S. Davies
                                 *Counsel for Appellants*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. vii

STATEMENT OF RELATED CASES ..................................................... xi

INTRODUCTION ................................................................................. 1

JURISDICTION .................................................................................... 4

STATEMENT OF THE ISSUES ............................................................. 4

STATEMENT OF THE CASE ................................................................ 5

    Apple's Application For A Patent On A Graphical User
        Interface For Accessing Online Videos ................................. 5

    The Examiner's Rejection Of All Claims.......................................... 8

    The Patent Trial And Appeal Board's Cursory Rejection Of
        The Claims............................................................................ 12

SUMMARY OF THE ARGUMENT ....................................................... 14

STANDARD OF REVIEW.................................................................... 18

ARGUMENT ....................................................................................... 18

    I.    The PTAB Erred Because Cook And Saarinen Do Not
        Teach Or Suggest All The Limitations In Claim 1.............. 18

        A.    Cook and Saarinen do not literally disclose all the
            limitations of claim 1. ................................................. 19

            1.    Cook does not disclose a "plurality of icons"
                with a corresponding "list of information
                about online video items." ................................... 23

            2.    Cook does not disclose a "first list of
                information about online video items."............. 25

            3.    Cook does not disclose dual functionality of
                a row. ..................................................................... 27

B.    One skilled in the art would not have found the video access app obvious in light of Cook and Saarinen. ........................................................ 30

II.    The PTAB Failed To Explain The Grounds On Which It Rejected The Vast Majority Of Claims. .............................. 37

A.    The Court will reverse or vacate a PTAB obviousness rejection that is not adequately explained. ..................................................... 37

B.    The PTAB did not give an adequate explanation for rejecting the independent claims and the vast majority of dependent claims. .................................... 41

1.    The PTAB's explanation for rejecting the independent claims is inadequate. .................... 41

2.    The PTAB's explanation for rejecting the vast majority of dependent claims is inadequate. .......................................................... 44

3.    The PTAB did not adopt the examiner's opinion and, in any event, the examiner did not give adequate explanations. ........................ 45

III.    The PTAB Erred Because Cook And Saarinen Do Not Render Any Of The Dependent Claims Obvious. ................ 47

A.    The PTAB's explanations for rejecting three dependent claims are meritless. .................................. 48

B.    The PTAB did not adopt the examiner's explanations for rejecting the dependent claims and, in any event, the examiner's reasons are meritless. ..................................................... 50

1.    Cook does not disclose dependent claims 4, 13, 15, 16, and 26. ............................................... 51

2.    Saarinen does not disclose claims 5, 6, 7, 12, 22, 27, and 28. ................................................. 56

CONCLUSION ...................................................................... 59

ADDENDUM

PTAB Decision, dated May 21, 2015 .................................................. A1-10

Patent Application No. 11/968,067

    Amended Claims ...................................................................... A15-23

    Amended Abstract .................................................................... A490

    Amended Figure 5B.................................................................. A512

Patent Application Publication No. 2008/0320391 ...................... A952-87

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
  522 U.S. 359 (1998) ..............................................................3, 37, 38, 47

*Apple Inc. v. ITC,*
  725 F.3d 1356 (Fed. Cir. 2013) ...........................................................14

*Apple Inc. v. Samsung Elecs. Co.,*
  No. 14-1802, 2015 WL 5449721 (Fed. Cir. Sept. 17, 2015) ...............14

*In re Applied Materials,*
  692 F.3d 1289 (Fed. Cir. 2012) ...........................................................41

*In re Beasley,*
  117 F. App'x 739 (Fed. Cir. 2004) ........................................................41

*Broadcom Corp. v. Emulex Corp.,*
  732 F.3d 1325 (Fed. Cir. 2013) ...........................................................30

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156 (1962) ..............................................................................38

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,*
  224 F.3d 1308 (Fed. Cir. 2000) .....................................................26, 58

*CFMT, Inc. v. Yieldup Int'l Corp.,*
  349 F.3d 1333 (Fed. Cir. 2003) ...........................................................42

*In re Chu,*
  66 F.3d 292 (Fed. Cir. 1995) ...............................................................48

*In re Fritch,*
  972 F.2d 1260 (Fed. Cir. 1992) .....................................................48, 49

*In re Giannelli,*
  739 F.3d 1375 (Fed. Cir. 2014) ...........................................................43

*In re Giuffrida,*
  527 F. App'x 981 (Fed. Cir. 2013).......................................................40

*In re Glatt Air Techniques, Inc.*,
    630 F.3d 1026 (Fed. Cir. 2011) ..................................... 15, 29

*In re Handel*,
    312 F.2d 943 (CCPA 1963) ..................................... 17, 46, 51

*In re Huai-Hung Kao*,
    639 F.3d 1057 (Fed. Cir. 2011) ........................................... 41

*Interconnect Planning Corp. v. Feil*,
    774 F.2d 1132 (Fed. Cir. 1985) ........................................... 31

*In re Kahn*,
    441 F.3d 977 (Fed. Cir. 2006) ..................... 16, 17, 38, 40, 44

*In re Klein*,
    647 F.3d 1343 (Fed. Cir. 2011) ..................................... 17, 41

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ................................... 12, 13, 16, 34, 38

*Leo Pharm. Prods., Ltd. v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013) ..................................... 18, 36

*Mintz v. Dietz & Watson, Inc.*,
    679 F.3d 1372 (Fed. Cir. 2012) ................................ 31, 34, 38

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................. 38

*In re Nouvel*,
    493 F. App'x 85 (Fed. Cir. 2012) .................................... 39, 40

*In re Ochiai*,
    71 F.3d 1565 (Fed. Cir. 1995) ..................................... 42, 46

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
    520 F.3d 1358 (Fed. Cir. 2008) ..................................... 16, 34

*Plantronics v. Aliph, Inc.*,
    724 F.3d 1343 (Fed. Cir. 2013) ........................................... 41

*Power Integrations, Inc. v. Lee*,
    797 F.3d 1318 (Fed. Cir. 2015) ........................................... 41

*In re Rouffet*,
    149 F.3d 1350 (Fed. Cir. 1998) ........................................... 17

*In re Sang-Su Lee*,
    277 F.3d 1338 (Fed. Cir. 2002) ......................................... 17, 40, 43, 47

*Sealant Sys. Int'l, Inc. v. TEK Global., S.R.L.*,
    Nos. 2014-1405, -1428, 2015 WL 3622097 (Fed. Cir. June
    11, 2015) ..................................................................... 29

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ........................................................ 38

*In re Shoner*,
    341 F. App'x 642 (Fed. Cir. 2009) ...................................... 40

*In re Sovish*,
    769 F.2d 738 (Fed. Cir. 1985) ........................................... 37

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
    492 F.3d 1350 (Fed. Cir. 2007) ......................................... 34

*In re Thrift*,
    298 F.3d 1357 (Fed. Cir. 2002) ......................................... 44

*In re Vaidyanathan*,
    381 F. App'x 985 (Fed. Cir. 2010) ...................................... 44

## Statutes, Rules and Regulations

28 U.S.C. § 1295(a)(4)(A) ....................................................... 4

35 U.S.C. § 103 .................................................................... 18

35 U.S.C. § 141(a) ............................................................... 4

35 U.S.C. § 142 .................................................................... 4

37 C.F.R. § 1.121 ................................................................. 39

37 C.F.R. § 90.3..................................................................................... 4

Fed. R. App. P. 47.5 ..............................................................................xi

**Other Authorities**

Apple Press Info, *YouTube Live on Apple Today; Coming to iPhone on June 29* (June 20, 2007), http://tinyurl.com/oml47xr.................................................................... 2

Steve Jobs 2007 Keynote Address, http://tinyurl.com/o9p5jq5 .......... 1, 32

MacRumors, *Amazon Releases Prime 'Instant Video' App for iPhone* (Dec. 13, 2012), http://tinyurl.com/d2hf4se ............................ 35

Patent & Trademark Offices, *Manual of Patent Examining Procedures* (9th ed. 2014)

    MPEP § 706 ....................................................................... 39

    MPEP § 707.07(d) .............................................................. 39

    MPEP § 714 ....................................................................... 39

    MPEP § 2103 ..................................................................... 39

    MPEP § 2111.01 ................................................................ 57

## STATEMENT OF RELATED CASES

This appeal concerns a rejection by the Patent Trial and Appeal Board of the United States Patent and Trademark Office of a patent application submitted by several inventors at Apple Inc. (hereafter, collectively referred to as Apple).

Pursuant to Federal Rule of Appellate Procedure 47.5, counsel for Apple states that there has been no prior appeal from this proceeding in this or any other appellate court, and counsel is aware of no case that will be directly affected by the Court's decision in this case.

Counsel notes that *In re Van Os*, Case No. 15-1975 (Fed. Cir.), involves another patent application by some of the same Apple inventors that was rejected after the same PTAB proceeding.

# INTRODUCTION

On January 9, 2007, Apple introduced the iPhone.  As Steve Jobs explained in a keynote address to developers, the mobile device combined an iPod (music and video player) with a cellular phone and an advanced internet communicator.  What made this first-of-a-kind combination possible was a "revolutionary user interface," one that eliminated the physical keyboard and instead provided a "multi-touch" screen that allowed users to "scroll" and otherwise manipulate various images depending on the program or "app" being accessed.[1]

The day the iPhone was released, Apple applied for a patent on a "Portable Multifunction Device."  A975 [0001] (Application No. 60/937,993).  A descendent application describes the graphical user interface of an app that allows users to access online videos.[2]  A15-23; A490; A512; A952-87.  By reformatting access to online videos, Apple's video access app was able to provide a previously unavailable amount of

---

[1] Steve Jobs 2007 Keynote Address (Jobs 2007 Keynote), http://tinyurl.com/o9p5jq5.

[2] Throughout this brief, the invention is referred to as the "video access app" or "app" while "application" refers to Apple's request for a patent on the invention.

functionality on a touch screen display.  With the touch of a finger,
users could see and scroll through various categories of online video
items, and then either view more information about a specific video or
wirelessly stream it.[3]  No longer did users have to tediously scroll
through websites to find a desired video.

More specifically, Apple's video access app displays multiple icons
that offer alternative choices for filtering online videos; those icons have
accompanying lists that are displayed when the icon is active; each list
contains multiple rows of online video items; and within each row, a
user has the option of playing a video or, in an alternative embodiment,
acquiring more information on a particular video.  Because all of this
appears on a touch screen display, upon opening the app, a single tap
may be all that is necessary to set a desired video in motion—such ease
of access was previously unknown and paved the way for many of the
streaming apps in existence today.

After eight years of proceedings, however, the Patent Trial and
Appeal Board rejected nearly all of Apple's claims with a few conclusory

---

[3] *See* Apple Press Info, *YouTube Live on Apple Today; Coming to iPhone
on June 29* (June 20, 2007), http://tinyurl.com/oml47xr.

sentences.  The PTAB appears to have reasoned that two prior art references literally teach the claims or otherwise suggest them, thereby rendering the video access app "obvious."  A5-7.  As Apple details below, that conclusion is erroneous. The prior art does not teach or suggest video browsing with a single tap nor does it teach video selection or information acquisition with just two.  The PTAB should have approved Apple's claims on the merits.

This appeal and the *In re Van Os* appeal (see Statement of Related cases) are the first appeals Apple has filed from PTAB examinations. As this Court knows, Apple has a strong interest in a sound U.S. patent system.  Apple's innovative products are protected with thousands of U.S. patents while Apple is also routinely sued by patent assertion entities and others.  In seeking review of the PTAB's cursory rejections, Apple invites the Court to reaffirm the enduring wisdom of the agency-law insight that insistence on articulated reasons "promotes sound results."  *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 375 (1998).

## JURISDICTION

This is an appeal from a final decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office.  The Board issued its final decision on May 21, 2015.  A1-10.  Appellants filed a notice of appeal on July 22, 2015, within the time limit set by 35 U.S.C. § 142 and 37 C.F.R. § 90.3.  A827-41.  This Court has jurisdiction over this appeal under 35 U.S.C. § 141(a) and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

1.  Did the PTAB err by rejecting the independent claims and all but two of the dependent claims where (a) the cited prior art does not literally teach video access with a single tap or video selection and information acquisition with just two touches and (b) there was no basis otherwise for concluding that the video access app was obvious in light of the prior art?

2.  Did the PTAB err by failing to articulate reasons for finding the elements of the video access app obvious where the PTAB's "analysis" consisted of just the conclusion that two pieces of prior art "combined" "render" the claims obvious?

3. Did the PTAB err by rejecting numerous dependent claims?

4

# STATEMENT OF THE CASE

At issue in this case is Apple's application for a patent on a graphical user interface for accessing online videos. Without meaningful explanation, the Patent Trial and Appeal Board (PTAB) rejected virtually all the claims in Apple's patent application covering that interface. This appeal follows.

## Apple's Application For A Patent On A Graphical User Interface For Accessing Online Videos

The iPhone is a "multifunction device" "with a graphical user interface" that the "user interacts with ... primarily through finger contacts and gestures on the touch-sensitive display." A975 [0008].[4] The functions of the device include "telephoning, video conferencing, e-mailing, instant messaging, blogging, digital photographing, digital videoing, web browsing, digital music playing, and/or digital video playing." *Id.* To make these varied functions usable, for each application, Apple had to invent a touch screen graphical interface that was intuitive and easy to use.

---

[4] The patent application (A952-87) and relevant amendments (A15-23, A490, A512) are included in the addendum to this brief.

An illustrated embodiment of Apple's graphical user interface for accessing online videos is portrayed in Figure 5A from the application:[5]



Figure 5A

A959 (Fig. 5A).

The full text of the first independent claim is reproduced on the inside cover of this brief. All told, the first claim in the video access app discloses three layers of functionality within a touch screen display: (1) the "icons" provide a range of categories and (2) the "lists" supply a

---

[5] Online videos are "videos available at a website such as www.youtube.com" rather than resident on the device itself. *See* A975 [0006].

selection of online video items within the category that corresponds to the selected icon, and (3) within each row that refers to individual online video items, the user can select a portion of the row to acquire additional "information" about a video or tap a different portion of the row for "playing" the video.  A15-16.

The application includes a second independent claim that is the same as the first claim except it omits the function of displaying additional information.  A16.  In other words, as compared to claim 1, the version of Apple's user interface set out in claim 2 includes only one function embedded within each row: playing the online video item.[6]

The application also includes a series of claims that depend on claim 2.  A17-18.  These dependent claims disclose more precise features for browsing, viewing, and playing online video items.  Specifically, claim 3 adds the additional information function for each row; A16-17; A984 [0157]; claims 4 and 8 disclose defined icon categories; A17; A983 [0146], [0148]; claims 5 to 7 and 12 specify the manner in which the disclosed elements appear on the touch screen;

---

[6] Because the parties and the PTAB treated claim 1 as a representative claim, this brief does so as well.  Claim 2 supplies an alternative, broader version of Apple's user interface.

A17-18; A983 [0146]; A984 [0151]; claims 9 to 11 disclose the ability to reprioritize the icons to display those categories the user finds most useful; A17-18; A981 [0078]; claims 13 to 19 and 27 to 28 disclose various playback controls that allow the user to play, pause, or increase the volume of the video, A18; A984 [0152], with options for the playback controls appearing or disappearing at varying intervals, A18-20; A984 [0153]; claims 20 to 26 disclose the ability to bookmark videos or share them via email or messaging; A19-20; A984 [0154-55], and the option to click on a portion of a row and obtain related content; A20; A984 [0157].

## The Examiner's Rejection Of All Claims

Following the filing of Apple's patent application, the examiner issued a series of rejections. A452-63; A581-96; A622-34; A668-82. Through November 2011, the examiner relied upon art from some of the same Apple inventors, which had a later priority date than the video access app. A510-11; A610-11. Eventually, following briefing, A610-11, in November 2011, the examiner re-opened the examination. A624.

But the examiner again rejected the entire patent application, this time relying on a patent issued to David Cook (U.S. Patent 7,730,271)

8

as the primary prior art. A626-34; A670-80. The examiner also relied on a patent application issued to Kalle Saarinen (U.S. Publication No. 2007/0024646), and, to a lesser extent, two other pieces of prior art: Sakai (U.S. Publication No. 2007/02299465) and Bettis (U.S. Publication No. 2007/0064619). *Id.*

Cook addresses access to media samples on traditional "Internet sites" and has nothing to do with a user interface for touch screens. A872, col. 2:39. It seeks to capitalize on the fact that "media samples have proven to be a useful tool to encourage and assist consumers in selecting media to purchase online," and so it focuses on using such samples as consumer advertisement when a user "perform[s] media-related" Internet searches. A872, col. 1:33-35, col. 2:39. Accordingly, Cook teaches a method for generating media samples based on a consumer's search terms. A872, col. 2:37-56. When a consumer enters the name of an artist, album, or video game into a search box, the search engine identifies samples associated with that artist, album or game. A872, col. 2:39-45. In one embodiment, the results appear as "a listing of album covers" and are accompanied by links "to listen to ... music sample[s]" and/or purchase the albums. A874, col. 6:33-39.

9

In the example below, the user has typed "Mandy More" into a traditional search engine. A874, col. 6:33-36.



A867 (Fig. 3B).

In rejecting the application based on Cook, the examiner initially just cited to passages of Cook after portions of the claim elements. A626-34. Illustrative is the examiner's treatment of two aspects discussed above:

> "displaying a first list of information about online video items in a plurality of lists of information about online video items" Cook col.4 lines 39-65;

> "displaying a plurality of icons corresponding to at least
> some of the plurality of lists of information about online
> video items" Cook col.6 lines 33-39;

A626 (emphases omitted).  When Apple in good faith attempted to respond to the citations by addressing each of them, the examiner wrote "*citations are exemplary*; any ordinary skilled in the art [sic] ought to be able to review, consider, and understand a cited reference in its entirety."  A671 (emphasis in original).  The examiner then accused Apple of "not mov[ing] the prosecution forward."  *Id.*  In the final rejection, the examiner took a similar approach.  A675-80.

Saarinen is the other piece of prior art that played a meaningful role in the proceedings below.  Saarinen is one of the many failed attempts to cobble together a mobile approach to web browsing.  A878-916.  Saarinen did so, in part, by embracing the use of special hardware keys that provide for zooming functionality and by teaching methods of panning—a means of moving around content.  A903 [37], [41].  In the examiner's view, Saarinen helped render claims obvious on account of its touch screen and finger gestures as well as its application menu feature.  A675-76 (citing to various portions of Saarinen).

**The Patent Trial And Appeal Board's Cursory Rejection Of The Claims**

Although the PTAB took over two years to hold oral argument following the completion of briefing, *compare* A755-76 (reply brief dated March 4, 2013) *with* A810-24 (oral argument dated May 12, 2015), it took only nine days to issue its decision. A1. The PTAB opinion is nine pages and reproduced at A1 to A10. The "ANALYSIS" addressing claim 1 spans two pages. A5-7. The PTAB offered a two-sentence description of the examiner's ruling, noting that the examiner stated that "in Cook, the lists can be items 1-3 of Figure 3b, where each item contains information regarding the respective album, which is represented by an icon" and that "Saarinen teaches a touch screen and detecting a finger gesture." A6.

The actual "analysis" consists of two short paragraphs. In the first, the PTAB block quotes *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007): "Section 103(a) forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having

12

ordinary skill in the art to which said subject matter pertains.'" A6.

And then the PTAB writes:

> the evidence of record supports the [e]xaminer's finding the
> [sic] Saarinen's touch screen and finger gestures, (see, e.g.,
> Saarinen ¶¶ 37, 43), combined with Cook's icons and
> plurality of lists of information (*see* Cook Fig. 3b), renders
> obvious the disputed limitations of claim 1.

A6-7.

As to the second paragraph of analysis, the PTAB again starts by

quoting *KSR*: "Although Appellants argue songs 'are not online video

items' (App. Br. 20), '[a] person of ordinary skill is also a person of

ordinary creativity, not an automaton.'" A7 (quoting *KSR*, 550 U.S. at

421). And then adds:

> Moreover, as the Examiner finds, Cook contemplates the use
> of various types of media, such as video, and is no way
> limited to use with merely songs or audio.

A7 (citation omitted). These few spare sentences comprise the entire

analysis of the PTAB's rejection of claim 1.

The PTAB rejected all of the remaining claims, mostly for the

same reason it rejected claim 1 (*see* A7, rejecting claims 2, 3, 5-8, 12-22,

and 24-33), and three for independent reasons (*see* A7-9, rejecting

claims 4, 9, and 23). It reversed the examiner on two dependent claims,

13

claims 10 and 11, concluding that Saarinen does not teach or suggest "visually replacing" a second icon with a first icon.  A8-9.

While the patent application was working its way through the patent system, the iPhone went on to great commercial success.  "After its release, reviewers praised a number of features on the iPhone, including its multitouch screen, software, ease of use, and overall user experience." *Apple Inc. v. Samsung Elecs. Co.*, No. 14-1802, 2015 WL 5449721, at *1 (Fed. Cir. Sept. 17, 2015).  As has since been recognized, the iPhone "has propelled not just technology, but also dramatically altered how humans across the globe interact and communicate.  It marks true innovation." *Apple Inc. v. ITC*, 725 F.3d 1356, 1368 (Fed. Cir. 2013) (Reyna, J., concurring in part, dissenting in part).

## SUMMARY OF THE ARGUMENT

1.  The PTAB appears to have found that "Cook's icons and plurality of lists of information (see Cook Fig. 3b)" contain all the teachings of Apple's patent application except for the "touch" elements.  But there are at least three meaningful distinctions between Cook's interface and the non-touch elements of the interface set out in claim 1.  Because Cook does not teach these elements, or otherwise suggest

them, each distinction presents an independent basis for finding the application nonobvious. *See, e.g.*, *In re Glatt Air Techniques, Inc.*, 630 F.3d 1026, 1030 (Fed. Cir. 2011) (Board failed to make prima facie case of obviousness where limitations of invention were missing from the prior art).

First, when a user touches an icon, a corresponding list of information about online video items is displayed. The icons in Cook do no such thing. To the extent they have any functionality, they either allow one to purchase a media item or present a wholly new screen with a player. Second, in the Apple interface, each list of information contains multiple online video items. By contrast, in Cook, each list pertains to one and only one online item. Third, the version of Apple's interface set out in claim 1 permits a user to either play an item or obtain more information about the video by tapping on different portions of the same row. Cook does not teach dual functionality in the same row.

2. The PTAB's rejection may have turned on the notion that Apple's interface was "obvious" in the sense that anyone skilled in the art would have invented it. But if that is what the agency meant, that

15

rationale also would lack merit.  The solutions to accessing online videos that were devised by other inventors at the time focused exclusively on providing complex methods for accessing content via a web browser rather than Apple's approach of simplifying delivery of the content itself.  Even a brief survey of today's app market demonstrates that what Apple invented was not the natural product of "a finite (and small in the context of the art) number of options" that could be "easily traversed to show obviousness."  *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008).

3.  *KSR* makes clear that the PTO's reasoning "should be made explicit."  *KSR*, 550 U.S. at 418.  "Rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."  *Id.* (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).  But in rejecting the claims, the PTAB stated simply, "Saarinen's touch screen and finger gestures … combined with Cook's icons and plurality of lists of information" "renders obvious the disputed limitations of claim 1."  There is no "articulated reasoning" here.  Citing to two prior art references and

saying "combined with" hardly suffices to "explain the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *In re Kahn*, 441 F.3d at 986 (quoting *In re Rouffet*, 149 F.3d 1350, 1359 (Fed. Cir. 1998)).

Nor is it accurate or helpful to read the PTAB's decision as adopting the examiner's reasoning. The PTAB did not expressly adopt the examiner's reasoning, and this Court's "function is to pass only on such grounds of rejection as have not been reversed by the highest tribunal of the Patent Office." *In re Handel*, 312 F.2d 943, 948 (CCPA 1963). But regardless, the examiner's reasoning is likewise too cursory to constitute "the requisite findings" and to "explain the reasoning by which the findings are deemed to support the agency's conclusion." *In re Sang-Su Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002), *aff'd on subsequent appeal*, 262 F. App'x 275 (Fed. Cir. 2008).

4. The PTAB's independent bases for rejecting many of the dependent claims are meritless. Those claims all contain limitations that are neither taught nor suggested by the prior art.

## STANDARD OF REVIEW

Whether the PTAB erred in arriving at a "determination of obviousness under § 103 is a question of law." *In re Klein*, 647 F.3d 1343, 1347 (Fed. Cir. 2011). The Court reviews the "ultimate determination of obviousness de novo" while "factual findings underlying that determination [are reviewed] for substantial evidence." *Id.* Where, as here, the question presented concerns the application of 35 U.S.C. § 103 "in light of the [undisputed] prior art references," the Court's review is de novo. *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1353 (Fed. Cir. 2013).

## ARGUMENT

## I.    The PTAB Erred Because Cook And Saarinen Do Not Teach Or Suggest All The Limitations In Claim 1.

The graphical user interface for accessing online video items set out in Apple's patent application was not obvious. No other user interface in the prior art teaches video accessing with a single tap or video access and information acquisition with two touches. None of these elements are in the cited prior art, and no one other than Apple thought to use these elements in a graphical user interface for accessing online video items.

In rejecting the patent application on obviousness grounds, the PTAB erred twice. First, the cited references do not disclose all of the limitations of the asserted claims. *See infra* § A. Second, there was no basis for concluding that one skilled in the art would have otherwise found the video access app obvious. *See infra* § B.

## A. Cook and Saarinen do not literally disclose all the limitations of claim 1.

The PTAB wrote that "Cook's icons and plurality of lists of information (*see* Cook Fig. 3b)" contain all the teachings of Apple's patent application. A6. On this rationale, the PTAB reasoned that "in Cook, the lists can be items 1-3 of Figure 3b, where each item contains information regarding the respective album, which is represented by an icon." A6.[7] If that is the rationale, the PTAB erred.

Here again is Cook's Fig. 3B (colors are added):

---

[7] Following the examiner's lead, the PTAB's citation to Saarinen focused exclusively on its "touch screen and finger gestures." A6-7. There is no dispute that Saarinen teaches a "touch" screen interface.



A867 (Fig. 3B).

And here again is a version of Apple's graphical user interface set out in Figure 5A (colors are added):



Figure 5A

A959 (Fig. 5A).

As best Apple can discern, the PTAB appears to have equated

Apple's "plurality of icons" ( ✂ , ▢ , 🔍 , ⋯ ) (indicated by the area

bordered in red), with the Cook album covers (e.g., ▦ ) or the "Listen!"

button (both contained within the red bordered area); Apple's "list" (e.g.,

"Pokemon Theme Music," "SNL-Digital Short," "guitar") (bordered in green) with the Cook audio track title and production information for the selected artist (bordered in green); and Apple's "items" (bordered in orange) with Cook's title (bordered in orange).[8]  A6-7.  This understanding is summarized as follows:

- Apple's "plurality of icons" = Cook's album covers/"Listen!" button

- Apple's "list" = Cook's audio track and product information for a selected artist

- Apple's "items" = Cook's album title

If this is right, the PTAB erred.  As we detail below, there are at least three significant distinctions between Cook's interface and claim 1 set out in Apple's patent application.  Specifically, Cook does not teach the video access app's (1) icon initiation process, (2) lists of information containing multiple items, and (3) rows with dual functionality where

---

[8] This understanding is based on the PTAB's characterization of the examiner's treatment of Cook:  "[T]he lists can be items 1-3 of Figure 3b, where each item contains information regarding the respective album, which is represented by an icon."  A6.  The "information" is treated as the equivalent of that which is contained in the "list of information" in the video access app, and the "icons" that correspond to that list of information are treated as the equivalent of the "icons" in the video access app.

one of those functions includes disclosing additional information about an item.

### 1.    Cook does not disclose a "plurality of icons" with a corresponding "list of information about online video items."

The Apple interface displays a "plurality of icons" (bordered in red). In Figure 5A, the ♣♣ "icon" is operative, as indicated by the black border. The ♣♣ icon refers to "most viewed" online videos, and so the interface is showing a list of "most viewed" video titles along with other information about each online video item. The "list" of information is identified in green above.

The user can switch over to another category of videos by tapping a different icon ( ✂, ▭, 🔍 , ••• ), which may display, for example, videos catalogued as "featured," or "bookmark[ed]" (i.e., saved). The user can also tap on the "more" icon to obtain additional categories, including, for instance, "history," "most recent," and "top rated." A964. The first claim in the application refers to this aspect of the interface as "in response to detecting *a finger gesture on a respective icon* in the plurality of icons, *displaying*, on the touch screen display of the portable

electronic device, *a corresponding list of information about online video items*." A16 (emphases added).

By contrast, in Cook, there are no icons that provide a corresponding list of online video items. Cook itself calls only the "price" button an "icon," A874, col. 6:38, and that icon does not produce any list of online video items. Indeed, Cook's only reference to "lists" is with regard to the album covers. A874, col. 6:35 ("a listing of album covers"). To the extent all three album covers cumulatively comprise "the list," its "list" has no corresponding icon, much less a plurality, as claimed by Apple. A15 ("displaying a plurality of icons corresponding to at least some of the plurality of lists of information").

Going beyond what the examiner suggested, the PTAB appears to have believed that each Cook "icon" "represent[s]" the "lists" in "items 1-3" of Figure 3b because "each item contains information regarding the respective album." A6; *see also supra* n.8. In other words, on this understanding, each album or listen button is an "icon" (in red) and the sets of "information" to the right of each album (in green) constitute the "lists."

But this does not work either.  The information to the right of each album in Cook is not generated "in response to" touching the icons (i.e., album/listen button).  Rather, for example, as Cook explains, "[w]hen the consumer chooses the 'Listen link' [icon] from the search results page FIG. 3B, the 'branded player' [from Figure 5] is launched." A875, col. 8:27-28.

> ### 2.    Cook does not disclose a "first list of information about online video items."

When opened, Apple's video access app immediately displays a library of online video items—e.g., "Pokemon Theme Music," "SNL-Digital Short," "guitar" (bordered in orange), "shoes," and "Quick Change Artists."  In doing so, the app allows a user with a single tap to begin viewing online video items.  The first claim in the application refers to this aspect of the invention as the interface "*displaying ... a first list* of information about online video items." A15.

The Apple interface makes clear that the first list of information must be about *multiple* online video items.  *E.g.*, A15-16.  Apple purposefully employed the plural.  Indeed, one skilled in the art is reminded at every step that the list of information is a list "about online video items."  *Id*.  By contrast, where Apple desired to use the singular,

it expressly did so.  In another step, for example, the application makes clear that it is talking about one and only one video by using the singular—"item."  *Id.*  "In the absence of any evidence to the contrary," this Court must "presume that the use of these different terms in the claims connotes different meanings."  *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Viewing Cook in the manner set out above, there is no "first list of information" where that list is about ***multiple*** "online video items."  Instead, each "first list" concerns the same, single online video item: *e.g.*, "Mandy More" [sic].  A867.

Cook's list of a single item makes sense because it was focused on audio rather than video content.  Although Cook references videos, *see, e.g.*, A872, col. 2:39-41; A873, col. 4:41-42, it does not disclose a method of providing online video items.  For instance, if video content is substituted for audio content in Figure 3B, there would be no list displayed because there is no video analog to individual songs.  Put another way, there is no marketplace for individual scenes from a movie and nothing would show up on the list portion of Cook if a video were

entered into the search engine rather than a musician or musical album.

### 3.    Cook does not disclose dual functionality of a row.

For Apple, instant display and using touches on icons to display corresponding videos was not enough. To achieve even greater functionality, Apple embedded operational features within each row. Upon detecting a finger movement on the list of information, the interface allows users to scroll the list of video titles. *E.g.*, A959 (2336); A983 [0149]. Such scrolling is identified in yellow in Figure 5A above. Note that only a portion of the screen (the portion that includes the video titles) scrolls; the icons, for example, remain where the user can see them. The first claim in the application refers to this aspect of the interface as "in response to detecting a moving finger gesture on the first list of information about online video items, *scrolling* the first list of information about online video items." A15 (emphasis added).

When a user settles upon a row after scrolling, claim 1 permits the user to choose from two functions for each video title. As illustrated here, those functions are embedded in different portions of each row:



A959 (Fig. 5A).

When a user taps a first portion of a row (bordered in blue), she plays a particular online video "item."  *E.g.*, A959 (2338-1, 2338-2, 2338-3, 2338-4, 2338-5); A983-84 [0150].  The first claim in the application refers to this aspect of the interface as "in response to detecting *a tap gesture on a first portion of a row in the first list of information about online video items,* wherein the row contains information about a particular online video item … *playing the particular online video item.*" A15 (emphases added).

And when the user makes a finger gesture on a second portion of the same row (bordered in purple), she acquires more information about the online video item contained in the row.  A959 (2344-3); A984 [00157].  The first claim in the application refers to this aspect of the interface as "in response to detecting *a finger gesture on a second portion of the row in the first list of information about online video items*, wherein the second portion of the row is different from the first portion of the row, displaying, on the touch screen display of the

portable electronic device, additional information about the *particular online video item*." A15 (emphases added).

Unlike the video access app, Cook does not teach dual functionality in the same row. Cook does not even teach rows at all. Instead, Cook simply notes a search produces album covers, links to samples, price, and other purchasing information. A874, col. 6:33-39. And the functionality that is set out in Cook is limited. A user can click on the "price" button and purchase the album, A874, col. 6:38-39, but cannot get additional information about an item. Accordingly, even if Cook did teach dual functionality within a given row, it would not meet the dual functionality elements because it does not teach the particular type of functionality embedded within each row.

*  *  *

As demonstrated above, Cook does not teach three elements of claim 1. Each distinction presents an independent basis for reversing the PTAB and finding the application nonobvious. *See*, *e.g.*, *In re Glatt Air Techniques*, 630 F.3d at 1030 (reversing PTAB obviousness rejection where limitations of invention were missing from the prior art); *see also Sealant Sys. Int'l, Inc. v. TEK Global, S.R.L.*, Nos. 2014-1405, -1428,

29

2015 WL 3622097, at *7 (Fed. Cir. June 11, 2015) (reversing district court where invention failed to teach "an additional hose [ ] cooperating with" the tire); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013) (reversing district court where prior art failed to disclose a "data path," and there was no reasonable expectation that adding a data path to the prior art would have been successful).

### B.    One skilled in the art would not have found the video access app obvious in light of Cook and Saarinen.

The PTAB wrote that "one skilled in the art would have recognized the combination of Cook and Saarinen teaches or suggests the disputed limitations of claim 1." A5-6. Implicit in the PTAB's rejection is the suggestion that Apple's interface was "obvious" in the sense that anyone skilled in the art could have invented it. But that rationale also lacks merit. The video access app was not yet imagined— Apple's engineers changed the way in which users would access online videos. By building off of a foundation of reformatted access to content, the video access app provided smartphone users with a whole new world of mobile online video accessing and viewing.

The proper nonobviousness analysis starts by "turn[ing] back the clock" and surveying "'the state of technology at the time the [iPhone]

was made.'" *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed.

Cir. 2012) (quoting *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132,

1143 (Fed. Cir. 1985)). As the application explains, "[a]s portable

electronic devices bec[a]me more compact, and the number of functions

performed by a given device increase[d]," in 2007, it had "become a

significant challenge to design a user interface that [would] allow[ ]

users to easily interact with a multifunction device." A975 [0004]. And

the challenge was important to solve because a "user interface is the

gateway through which users receive not only content but also

responses to user actions or behaviors, including user attempts to

access a device's features, tools, and functions." *Id.*

Conventional efforts to tackle the problem did little more than

offer a range of unappealing options. "Some portable communications

devices … resorted to adding more pushbuttons, increasing the density

of push buttons, overloading the functions of pushbuttons, or using

complex menu systems to allow a user to access, store and manipulate

data." *Id.* And these same convoluted systems used "physical

pushbuttons" that were "inflexible" and prevented a "user interface

from being configured and/or adapted by either an application running on the portable device or by users." A975 [0005].

The result was "frustrating to most users." *Id.* As Apple's CEO noted in characterizing portable devices on the market at the time of the iPhone's launch, "smartphones are definitely a little smarter [than regular cell phones] but they actually are harder to use, they are really complicated, just for the basic stuff, people have a hard time figuring out how to use them." Jobs 2007 Keynote, at 4:12-4:22.

The difficulty with using smartphones was particularly acute in the realm of online videos. In addition to the small screens, one of the major impediments to "to brows[ing], receiv[ing], view[ing], and manag[ing] online videos … [on] handheld devices" was the "need to navigate through a browser application to a website that includes online videos." A975 [0006]

In 2007, few people used their mobile devices for these purposes. *Id.* To navigate through a web browser to search and play a video, one had to scroll through an endless progression of screens (not to mention the upload time required to move forward or back). State of the art web browsing was exceedingly clunky—to say nothing about managing and

viewing online videos.  What users were scrolling through (recall that

screen tapping wasn't yet ubiquitous) looked something like this:

 

Unsurprisingly, almost no one bothered.  *Id.*  Online video access and

viewing was instead restricted to the domain of "desktop computers and

other computers with relatively large screens." *Id.*

Accordingly, there was a "need for portable multifunction devices

with more transparent and intuitive user interfaces for browsing,

receiving and playing online videos."  A975 [0007].  Such interfaces

would "increase the effectiveness, efficiency and user satisfaction with

portable multifunction devices." *Id.*

Apple reformatted access to online content and from there was

able to zero in on innovative mechanisms for efficiently accessing

content.  Until Apple accepted on its own initiative the challenge of

reformatting content, there was neither a motivation to combine

elements of prior art, nor was there any predictability of success.

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350,

1359 (Fed. Cir. 2007) (citing *KSR*, 550 U.S. at 421). In this regard,

Apple's "inventive contribution" lay "in defining the problem in a new

revelatory way." *Mintz*, 679 F.3d at 1377.

    Even a brief survey of today's app market demonstrates that what

Apple invented was not the natural product of "a finite (and small in

the context of the art) number of options" that could be "easily traversed

to show obviousness." *Ortho-McNeil Pharm.*, 520 F.3d at 1364; *see also*

*KSR*, 550 U.S. at 421 (where one of ordinary skill in the art is faced

with "a finite number of identified, predictable solutions" and pursues

"the known options within his or her technical grasp," the resulting

discovery "is likely the product not of innovation but of ordinary skill

and common sense"). Today, in a world where apps are ubiquitous,

developers have identified a virtually endless array of options for

creating user interfaces for mobile videos. There are viewing apps that

have different lists corresponding to a single icon, multiple video items

34

within a single row, one function for each item within a row, and even

multiple viewing options within a single row:[9]



And there are apps that have adopted the three sequential bullets ( ⁞ )

or bars ( ☰ ) as a proxy for more menu options—a feature that was

certainly available but not yet utilized at the time Apple created its

video access app:[10]

---

[9] MacRumors, *Amazon Releases Prime 'Instant Video' App for iPhone*
(Dec. 13, 2012), http://tinyurl.com/d2hf4se.

[10] http://www.pcworld.al/wp-content/uploads/2015/07/youtube-app.jpg



Because other inventors simply did not recognize the problem,
they were all just jousting over the best options—really the least bad
options—for mobile web browsing as a means of accessing videos.
Accordingly, the video access app was anything but obvious to those
skilled in the art. *See Leo Pharm. Prods.*, 726 F.3d at 1356–57
(explaining that an invention is nonobvious if other inventors "would
not have recognized the problem").

* * *

Apple's graphical user interface for online video access was not obvious. Neither Cook nor Saarinen teach Apple's user interface. And even "the hypothetical person of ordinary skill in the relevant art, familiar with all that" Cook and Saarinen disclose, would not have found it obvious to use a method "corresponding to what is claimed." *In re Sovish*, 769 F.2d 738, 742 (Fed. Cir. 1985).

## II.   The PTAB Failed To Explain The Grounds On Which It Rejected The Vast Majority Of Claims.

As just demonstrated, on the merits, the PTAB should have allowed claim 1 in Apple's video access patent application. But Apple submits that the PTAB's error here was the predictable outcome of an agency process that turned on written decisions devoid of adequate explanation. Regardless of whether the Court agrees with Apple on the merits, the conclusory quality of the PTAB's ruling here and in *In re Van Os* warrants comment from this Court.

### A.   The Court will reverse or vacate a PTAB obviousness rejection that is not adequately explained.

All agency determinations should be the product of "reasoned decisionmaking" so that the result is "logical and rational." *Allentown Mack Sales*, 522 U.S. at 374 (citation omitted). To that end, the agency

must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). "Reasoned decisionmaking, in which the rule announced is the rule applied, promotes sound results, and unreasoned decisionmaking the opposite." *Allentown Mack Sales*, 522 U.S. at 375.

As the Supreme Court has explained, this "simple but fundamental rule of administrative law," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), is of particular importance in determining whether a patent application survives the "nonobviousness" inquiry under § 103. *KSR,* 550 U.S at 418. "Rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some *articulated reasoning with some rational underpinning* to support the legal conclusion of obviousness." *Id.* (emphasis added) (quoting *In re Kahn*, 441 F.3d at 988). For instance, the "mere recitation of the words 'common sense' without any support adds nothing to the obviousness equation." *Mintz*, 679 F.3d at 1377.

Consistent with the "simple but fundamental rule of administrative law" that requires reasoned explanation for agency action, the relevant Patent and Trademark Office (PTO) regulations require the articulation of reasons for an obviousness rejection. "The goal of examination is to clearly articulate any rejection early in the prosecution process so that the applicant has the opportunity to provide evidence of patentability and otherwise reply completely at the earliest opportunity." Patent & Trademark Offices, *Manual of Patent Examining Procedures* (MPEP) § 706 (9th ed. 2014); *accord* MPEP § 707.07(d) ("The burden is on the Office to establish any prima facie case of unpatentability (*see, e.g.*, MPEP § 2103), thus the reasoning behind any rejection must be clearly articulated."). If the rejection appears sound to the patent applicant, the patent applicant may amend and refine the application. MPEP § 714 (citing 37 C.F.R. § 1.121).

In light of the above, the PTAB correctly and "regularly reverses obviousness rejections when an examiner's" reasoning is "insufficiently supported by a rational underpinning." *In re Nouvel*, 493 F. App'x 85, 92 (Fed. Cir. 2012). At the same time, the PTAB affirms obviousness rejections where the "[e]xaminer's rejection 'present[s] a reasonable

basis'" to render claims obvious. *In re Shoner*, 341 F. App'x 642, 644 (Fed. Cir. 2009) (citation omitted).

The same "simple but fundamental rule of administrative law" applies to PTAB decisions. To reject a patent application on obviousness grounds, the "Board must articulate the basis on which it concludes that it would have been obvious to make the claimed invention." *In re Kahn*, 441 F.3d at 986. It must "explain the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *Id.* (citation omitted). By emphasizing the quality of the PTAB's rulings, this Court advances the "simple but fundamental rule" of agency law that "promotes sound results."

Importantly, the Court's review of the PTAB's obviousness ruling "must be made on the grounds relied on by the agency." *In re Sang-Su Lee*, 277 F.3d at 1345; *In re Nouvel*, 493 F. App'x at 92. Thus, the Court may affirm rejections where there is "no significant difficulty discerning the Board's path to the rejections" but will reverse where the rejection is premised on "[b]road-brush statements" and the "reasoning within the PTO" is "conclusory." *In re Giuffrida*, 527 F. App'x 981, 986, 987

(Fed. Cir. 2013); *accord In re Applied Materials*, 692 F.3d 1289, 1294 (Fed. Cir. 2012) ("Board's judgment must be reviewed on the grounds upon which the Board actually relied"). If "the necessary reasoning is absent, [this Court] cannot simply assume that 'an ordinary artisan would be awakened to modify prior art in such a way as to lead to an obviousness rejection.'" *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013) (quotation omitted); *accord, e.g., Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1325 (Fed. Cir. 2015); *see also In re Huai-Hung Kao*, 639 F.3d 1057, 1067 (Fed. Cir. 2011); *In re Klein*, 647 F.3d 1343 (Fed. Cir. 2011); *In re Beasley*, 117 F. App'x 739, 744 (Fed. Cir. 2004).

## B. The PTAB did not give an adequate explanation for rejecting the independent claims and the vast majority of dependent claims.

### 1. The PTAB's explanation for rejecting the independent claims is inadequate.

The primary arguments advanced before the PTAB centered on independent claims 1 and 2 (and, by extension, the vast majority of dependent claims). Indeed, ten of the seventeen argument pages in Apple's brief before the PTAB turned on the language of the independent claims. A711-20. So presented, the PTAB was obligated to

make "a searching comparison of the claimed invention – including all its limitations – with the teaching of the prior art." *In re Ochiai*, 71 F.3d 1565, 1572 (Fed. Cir. 1995) (rejecting use of *per se* rules that "flout[] section 103 and the fundamental case law applying it" in favor of "a searching comparison ... [to the] teaching of the prior art"); *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) ("[O]bviousness requires a suggestion of *all limitations* in a claim." (citation omitted) (emphasis added)).

To say the least, that did not happen here.  Instead of addressing each of the limitations, the Board's entire analysis affirming the examiner's rejection of nearly all the claims spanned just over three pages.  A5-7.  And the real substance of that analysis boiled down to a single sentence:  The PTAB concluded that "the evidence of record supports the Examiner's finding the [sic] Saarinen's touch screen and finger gestures, (*see, e.g.*, Saarinen ¶¶ 37, 43), combined with Cook's icons and plurality of lists of information (*see* Cook Fig. 3b), renders obvious the disputed limitations of claim 1."  A6-7.[11]

---

[11] The only other substance offered by the PTAB was a rebuttal to the observation that Cook does not teach videos.  The PTAB noted that

In terms of the inadequacy of the reasoning, this case is on all fours with *In re Sang-Su Lee*, 277 F.3d 1338. At issue there was an application "directed to a method of automatically displaying the functions of a video display device and demonstrating how to select and adjust the functions in order to facilitate response by the user." *Id.* at 1340. The Board concluded that the application was obvious in light of a combination of two prior art references—a video game handbook and a patent for a television system with menu displays for adjusting picture and audio functions. *Id.* at 1340-41. This Court vacated. *Id.* at 1346. It held that the conclusory statements offered by the PTAB did "not adequately address the issue of motivation to combine." *Id.* at 1344. The "question of motivation," the Court explained, "is material to patentability" and the Board is obligated to make sure "the requisite findings" are made and "explain the reasoning by which the findings are deemed to support the agency's conclusion." *Id.* at 1343-44.

Numerous cases from this Court are in accord. *See In re Giannelli*, 739 F.3d 1375, 1380 (Fed. Cir. 2014) (reversing PTAB's

---

"Cook contemplates the use of various types of media, such as video, and is no way limited to use with merely songs or audio." A7.

affirmance of examiner's rejection where the PTAB's analysis "contained no explanation why or how a person having ordinary skill in the art would modify" a chest press machine to arrive at a rowing machine apparatus); *In re Vaidyanathan*, 381 F. App'x 985, 993 (Fed. Cir. 2010) (vacating and remanding PTAB's rejection of claims for a redetermination of obviousness where the PTAB and examiner failed to provide "any evidentiary support or reasoning for why a person of ordinary skill in the field of the invention would have" combined a neural network for determining optimal trajectory with a missile guidance system); *cf. In re Thrift*, 298 F.3d 1357, 1366 (Fed. Cir. 2002) (vacating and remanding, in part, where the PTAB failed to "provide an adequate ground for sustaining the rejection of" a claim because the PTAB did not discuss the claim's unique limitations).

In sum, as to the independent claims, the Board failed to "articulate the basis on which it concludes that it would have been obvious to make the claimed invention." *In re Kahn*, 441 F.3d at 986.

### 2.    The PTAB's explanation for rejecting the vast majority of dependent claims is inadequate.

Before the PTAB, Apple urged that all its claims were inventive for the reasons given to support claim 1.  A711-20 (challenging rejection

based on lead independent claims and groupings that included all dependent claims).  With the exception of claims 4, 9, and 23 addressed below (III.A), the PTAB rejected these claims with the inadequate reasoning addressed just above.  A7 ("Because Appellants have not presented separate patentability arguments for pending claims 2, 3, 5-8,12-22, and 24-33 or have reiterated substantially the same patentability arguments as those previously discussed for claim 1 …, we also sustain the rejections of pending claims 2, 3, 5-8, 12-22, and 24-33.").   For the same reasons given above, those rejections must be reversed for lack of an adequate explanation.

> ### 3.  The PTAB did not adopt the examiner's opinion and, in any event, the examiner did not give adequate explanations.

This is not an instance where the Board's decision is made clear enough by reference to the examiner's decision.  Most obviously, the PTAB did not state that it was adopting the examiner's reasoning, and for that reason alone the examiner's reasons are not relevant to this Court's inquiry.  A5 ("We conclude the Examiner did not err…"); A6 ("We find that the evidence of record supports the Examiner's finding…").

As this Court's predecessor wrote: "It seems to us that our function is to pass only on such grounds of rejection as have not been reversed by the highest tribunal of the Patent Office. In the instant case that means that the only grounds before us are the final reasons given by the board for refusing the appealed claims." *In re Handel*, 312 F.2d at 948.

In any event, the examiner's explanations are not adequate. The first time the examiner addressed and rejected all the claims on obviousness grounds in view of Saarinen and Cook, the examiner did little more than supply a few cites to prior art following each method step. A626-33. No reasoning accompanied the citations. And when Apple lodged its objections, the examiner just asserted that the inventors inaccurately characterized grounds for rejection and that they erroneously limited objections to the specific lines referenced. A671. And in the final rejection, the examiner employed the same cursory analysis, A675-80, reserving the few sentences of analysis for responses to the inventors' objections. There was no "searching comparison of the claimed invention – including all its limitations – with the teaching of the prior art." *In re Ochiai*, 71 F.3d at 1572.

* * *

As noted above, this appeal and the *In re Van Os* appeal are the first appeals Apple has filed from PTAB examinations.  In seeking review of the PTAB's cursory rejections, Apple invites the Court to reaffirm the enduring wisdom of the agency-law insight that insistence on articulated reasons "promotes sound results." *Allentown Mack Sales*, 522 U.S. at 375; *see In re Sang-Su Lee*, 277 F.3d at 1345-46.  On this record, it is evident the PTAB did not adequately explain its reasoning and, predictably, reached an unsound result.

## III.   The PTAB Erred Because Cook And Saarinen Do Not Render Any Of The Dependent Claims Obvious.

Just as the PTAB erred in rejecting claim 1, it erred in rejecting the 32 other claims in Apple's patent application.  Before the PTAB, Apple urged that all the claims were inventive for the reasons given to support claim 1.  A711-20.  With the exception of a few, the PTAB rejected these claims with the same inadequate reasoning addressed above.  A7 (rejecting claims 2, 3, 5-8, 12-22 and 24-33 for the same reason as claim 1).

Although for three dependent claims the PTAB did provide additional explanations, none of these explanations were procedurally

adequate or warrant rejecting the claims on their merits. *See, e.g.*, *In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) ("dependent claims are nonobvious if the independent claims from which they depend are nonobvious"). And, as to the other dependent claims, the PTAB offered no freestanding basis for rejecting them and once again, the examiner's opinion cannot save the PTAB's cursory analysis.

## A.    The PTAB's explanations for rejecting three dependent claims are meritless.

As to dependent claims 4, 9, and 23, the PTAB gave additional explanations. A7-9. But as to claim 4, A7-8, the PTAB erroneously suggested Apple waived any argument when, in fact, Apple raised and addressed claim 4 when discussing claim 1. *In re Chu*, 66 F.3d 292, 296, 299 (Fed. Cir. 1995) (reversing the Board's "rejection of [the] independent claim 1, and necessarily of [the] dependent claims" on nonobvious grounds where party offered no separate argument with "any reasonable degree of specificity" apart from the independent claim). As to dependent claim 9 and dependent claim 23, the PTAB gave additional substantive explanations for its rejection. A8-9. But the explanations were limited to the specific terms introduced by the dependent claim. *Id.* The PTAB did not explain why the elements of

48

claim 1 were obvious, and the law is well settled that a dependent claim is not rendered obvious merely because the dependent element alone is found in the prior art. *In re Fritch*, 972 F.2d at 1266 (recognizing that a dependent claim must be nonobvious where the independent claim upon which it relies is nonobvious). Because claim 1 is nonobvious, so too are claims 4, 9, and 23.

Moreover, claims 9 and 23 would still be nonobvious on account of the additional limitations. The PTAB rejected claim 9 by characterizing it as the functional equivalent of "editing operations for a playlist, as well as a function with an interface that directs the user to take actions." A8 (citing Cook 8:37-60). This is wrong. The user interface is not a general "'[e]dit' icon for editing the plurality of lists." A751. It allows the user to configure the icons that are displayed on the same touch screen display as the first list of information. Accordingly, the cited portions of Cook do not disclose a configuration icon that launches a user interface allowing for configuration of icons. A8 (citing Cook 8:37-60). Cook first describes "customiza[tion]" of the "number of [audio] samples that are automatically played." A875, col. 8:41-43. But Cook says nothing about configuration or "customization" by the user at

all, much less by displaying a user interface. Moreover, configuration is of the number of audio samples that are played, not of icons that are displayed along with a first list of information. Indeed, nowhere does Cook suggest the possibility of configuring what the PTAB characterized as the icons: the album cover or "Listen!" button.

The other portion of Cook referenced in the PTAB decision describes a promotional "call-to-action." A875, col. 8:50-54. The "call-to-action" is an "audio clip" that prompts "the consumer to press the 'Add to Shopping Cart' button." *Id.* This is a prompt by the online business directing the user to purchase, and has nothing to do with user configuration of icons. Because the cited portions of Cook do not disclose a configuration icon launching a user interface to configure icons appearing alongside the first list of information, claim 9 is not obvious in light of the prior art.

### B.    The PTAB did not adopt the examiner's explanations for rejecting the dependent claims and, in any event, the examiner's reasons are meritless.

The PTAB did not adopt the reasoning of the examiner for rejecting claims 4, 13, 15, 16, and 26 in light of Cook. A5-9. Nor did it adopt the examiner's reasoning for rejecting claims 5, 6, 7, 12, 22, 27

and 28 in light of Saarinen. *Id.* Indeed, with respect to claims 10 and 11, the PTAB concluded that Saarinen does not teach or suggest "visually replacing" the second icon with the first icon and determined that those two claims should not have been rejected. A8-9 (emphasis omitted). Accordingly, the examiner's reasoning is not relevant to this Court's review of the PTAB's ruling. *In re Handel*, 312 F.2d at 948. Nevertheless, to demonstrate the nonobviousness of its dependent claims, Apple addresses the examiner's statements below.

### 1.    Cook does not disclose dependent claims 4, 13, 15, 16, and 26.

**Claim 4**: This claim specifies that "the *plurality of lists of information* about online video items include at least two" of the following: "featured online video items," "most recently added online video items," "most viewed online video items," "top rated online video items," "bookmarked" content items, and "viewed" content items. A17 (claim 4) (emphasis added). By providing preset lists of information, the video access app allows the user to access and view online video items related to the user's interest area without ever conducting a traditional web search. She need only click one of the pre-generated

lists and then is conveniently presented with multiple online video items corresponding to her interest area.

These automatically generated "lists of information" do not appear in Cook. In Cook, the user receives no assistance from preset lists such as "most reviewed" or "featured." To the contrary, in order to arrive at Figure 3B, the user is forced to utilize a boolean-type search function, entering the name of the artist or album. A872, col. 2:39-42. This requires the user to type search terms on a small screen display, which can frustrate the user and dissuade him from using the technology. A975 [0005] ("the difficulty in activating a desired pushbutton ... is frustrating to most users").

Nonetheless, the examiner cited Cook 1:52-67, 6:3-39 and 8:38-39 as a basis for asserting that claim 4 is obvious. A676-77; A750. The first section of Cook cited by the examiner is from the "Background of the Invention" and describes a problem with selling media on Internet websites as compared to brick and mortar outlets. A872, col. 1:52-67. At a "traditional media store," there is typically music playing in the background "to encourage consumers to purchase media that is 'on-sale'

or is otherwise a 'featured selection,'" which is often missing from an Internet website.  A872, col. 1:54-55, 66-67.

This excerpt of Cook does not disclose preset lists of information. First, the excerpt describes "on sale" and "featured selection" media in the context of a "traditional media store," but does not discuss implementing these features in an Internet or portable electronic device setting.  Second, the excerpt describes automatically playing a "featured selection" *item,* but not providing a "featured" *list of information* as described by claim 4.  A plurality of preselected lists of information provides user accessibility, whereas a single preselected item is simply directed at encouraging customers to purchase.  *See* A872, col. 2:2-4 ("playing music in the background in record stores ... can be useful to encourage consumers to purchase music ...").

Although the examiner cites the buzzwords "on sale" and "featured selections," this excerpt of Cook does not actually allow a person skilled in the art to create a plurality of preselected lists of information on a portable electronic device.

The rest of Cook also does not teach the preselected lists of claim 4.  To the contrary, col. 6:38-39 describes the process of engaging

in a generic engine search. A875, col. 8:38-39, which describes automatically playing "a playlist of the top 3 most popular songs" in succession, differs from the video access app, which presents the user with access to "a plurality of lists of information" that are pre-selected according to a certain interest area. A15. Cook's automatic playlist provides only one such list. This again reflects Cook's stated goal—pushing customers towards purchase, rather than facilitating overall access to content. Accordingly, Cook does not teach the video access app's preselected lists of information.

**Claims 13, 15, and 16**: Claim 13 depends on claim 2 and claims 15 and 16 depend on claim 13. A18 (claims 13, 15, and 16). Claim 13 adds to claim 2 the limitation of displaying playback controls in response to a finger gesture while a video is playing. A18 (claim 13). Claim 15 adds to claim 13 the limitation of the playback controls appearing on top of the online video item and claim 16 adds ceasing to display the playback control. A18 (claims 15 and 16). The examiner's analysis of these claims consisted of nothing more than providing a single citation to the same passage from Cook following reproduction of each of the relevant claim terms: "Cook col. 4 lines 39-57." A678.

The only reference to "playback" in the passage from Cook cited by the examiner discusses another function entirely—a "log record" of the number of times a sample has been played so that a third-party media server system can charge fees to the search engine. A873, col. 4:54-57. This mechanism does not appear on a touch screen display while the online item is streaming and is, in fact, entirely outside the consumer's control.

**Claim 26**: Claim 26 depends on claim 3 and adds the limitation of different icons appearing in response to a finger gesture depending on whether the online video item is bookmarked. A20 (claim 26). Although the examiner cited the same reasoning employed for claims 20 and 22, A678-79, the examiner failed to recognize that nothing in Cook or Saarinen teaches the device sensing whether a particular item has been bookmarked. Rather, the passage of Cook identified with respect to claim 22 does not reference bookmarks *at all*. A679 (citing Cook col. 9:43-54). It discloses a method for sharing a product with a friend. A876, col. 9:43-54. And though the portion of Saarinen cited by the examiner does reference a bookmark, *see* A678 (citing Saarinen p.7 [113]), it simply teaches the function of a bookmark and ways to

manage bookmarks.  A907 [113].  It does not teach a method for sensing whether an item is already bookmarked and adjusting icons based on that perception.

### 2. Saarinen does not disclose claims 5, 6, 7, 12, 22, 27, and 28.

**Claim 5**:  Claim 5 depends on claim 2 and adds the limitation of portrait orientation.  A17 (claim 5).  The examiner's citation to Saarinen here references a paragraph that describes when different applications are selected and one icon disappears from the icon list.  A677 (citing A906 [0101]).  The paragraph has nothing to do with orientation of any images.

**Claims 6, 7, and 12**:  Each claim depends on claim 2 and adds, respectively, the following limitations:  The width of the row and touch screen are the same; the online video uses substantially all of the touch screen display area; and the online video is played in a landscape orientation.  A17-18 (claims 6, 7, and 12).  The examiner cited the same passages in Saarinen as to each of these.  A677-78 (citing Saarinen p.5 [0085-0086]).

Those passages are inapplicable.  The cited paragraphs simply describe the layout of Saarinen's display screen.  They do not disclose

rows of information, or state anything about rows comprising the width of the touch screen. They do not state what portion of the screen will be used for displaying video content, or indeed for any particular function. And they do not enable playing a video in landscape orientation. The examiner claimed, however, that "landscape orientation" is the same as "image orientation." A678.

But Apple clearly intended for "landscape orientation" to be interpreted in accordance with its plain meaning. MPEP § 2111.01 ("Under a broadest reasonable interpretation, words of the claim must be given their plain meaning, unless such meaning is inconsistent with the specification. The plain meaning of a term means the ordinary and customary meaning given to the term by those of ordinary skill in the art at the time of the invention."). It requires no technical expertise to recognize that landscape orientation refers to how a frame is viewed (with a longer width, in contrast with portrait view, which is also included the claims). Image orientation, on the other hand, refers to particular items within a complete picture.

**Claim 22**: Claim 22 depends on claim 2 and adds the limitation of displaying a sharing icon while a video is playing in response to a finger

gesture that initiates a message to another user that includes an online address. A19 (claim 22). The passage cited by the examiner does indeed reference sharing information that allows another to access the media file; however, it speaks only in terms of sending a *link*. A876, col. 9:46-47 ("[t]he email is sent with a link"). What the examiner failed to acknowledge is that the video access app distinguishes between sending a link (A19 (claim 21)), and sending an online address (A19 (claim 22)). This distinction has meaning. *See CAE Screenplates, Inc.*, 224 F.3d at 1317 ("[W]e must presume that the use of these different terms in the claims connotes different meanings."). A link, of course, is a URL embedded into a hyperlink that one can click on and obtain immediate access to a webpage. An online address, by contrast, may just be the information identifying the location where the video is stored—without a link, the recipient must type or cut and paste the address into the search bar of a web browser. Thus, irrespective of whether the passage from Cook cited by the examiner teaches claim 21, it does not teach claim 22.

**Claims 27 and 28**: Claim 27 depends on claim 2 and adds the limitation of stopping a video via a finger gesture on a playback icon

and thereby sending the user back to the list of information. A20 (claim 27). Claim 28 depends on claim 27 and adds the limitation of the finger gesture being a tap gesture. A20 (claim 28). The examiner simply cited a passage from Saarinen that teaches finger gestures as well as the passage from Cook identified above for claims 13, 15, and 16. A679 (citing Saarinen p.3 [0043] and Cook col. 4:39-54). Just as the playback reference has no application to claims 13, 15, and 16, it has none here. Cook provides no teaching that would govern a user's stopping and returning to the play list. In fact, to do so would undermine Cook's objective—of increasing sales—by making it easier for a customer to remove himself just when he is one step from the purchasing portal.

## CONCLUSION

This Court should conclude that the Patent Trial and Appeal Board erred in rejecting claims 1-9 and 12-33. In addition, the Court should remind the PTAB that rejections must include adequate reasons.

Respectfully submitted,

*/s/ Mark S. Davies*

Peter J. Yim
Brian B. Ho
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000

Cathy C. Shyong
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Rd.
Menlo Park, CA 94025
(650) 614-7400

Mark S. Davies
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

E. Joshua Rosenkranz
Marc R. Shapiro
Sarah M. Sternlieb
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

*Counsel for Appellants*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

PTAB Decision, dated May 21, 2015 ................................................... A1-10

Patent Application No. 11/968,067

    Amended Claims ..................................................................... A15-23

    Amended Abstract .................................................................. A490

    Amended Figure 5B................................................................. A512

Patent Application Publication No. 2008/0320391 ...................... A952-87

# PTAB Decision, Dated May 21, 2015

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/968,067 | 12/31/2007 | Stephen O. Lemay | P4976US1/106842089500 | 8156 |

| | EXAMINER |
|---|---|
| 119082        7590        05/21/2015 | |
| Apple c/o Morrison & Foerster LLP SF | HO, RUAY L |
| 425 Market Street | |
| San Francisco, CA 94105-2482 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2175 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/21/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

EOfficeSF@mofo.com
PatentDocket@mofo.com

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

*Ex parte* STEPHEN O. LEMAY, MICHAEL MATAS,
TIMOTHY P. OMERNICK, RICHARD WILLIAMSON,
IMRAN CHAUDHRI, CHARLES J. PISULA, and
MARCEL VAN OS

———————

Appeal 2013-005333
Application 11/968,067
Technology Center 2100

———————

Before JEAN R. HOMERE, DANIEL N. FISHMAN, and
BETH Z. SHAW, *Administrative Patent Judges*.

SHAW, *Administrative Patent Judge*.


DECISION ON APPEAL

Appellants seek our review under 35 U.S.C. § 134(a) of the
Examiner's final rejection of claims 1–33.  We have jurisdiction under
35 U.S.C. § 6(b).

We affirm-in-part.

Appeal 2013-005333
Application 11/968,067

INVENTION

The invention is for portable devices that access and display online

videos. *See* Spec. ¶ 3.

Claim 1 is representative and is reproduced below:

    1.    A method, comprising:
    at a portable electronic device with a touch screen
display:
    displaying, on the touch screen display of the portable
electronic device, a first list of information about online video
items in a plurality of lists of information about online video
items;
    displaying, on the touch screen display of the portable
electronic device, a plurality of icons corresponding to at least
some of the plurality of lists of information about online video
items;
    in response to detecting a moving finger gesture on the
first list of information about online video items, scrolling the
first list of information about online video items on the touch
screen display of the portable electronic device;
    in response to detecting a tap gesture on a first portion of
a row in the first list of information about online video items,
wherein the row contains information about a particular online
video item:
        initiating a request for the particular online video
    item from a remote computer,
        receiving the particular online video item, and
        playing the particular online video item;
    in response to detecting a finger gesture on a second
portion of the row in the first list of information about online
video items, wherein the second portion of the row is different
from the first portion of the row, displaying, on the touch screen
display of the portable electronic device, additional information
about the particular online video item; and
    in response to detecting a finger gesture on a respective
icon in the plurality of icons, displaying, on the touch screen

2

**A3**

Appeal 2013-005333
Application 11/968,067

    display of the portable electronic device, a corresponding list of
information about online video items.

## REJECTIONS

    The Examiner rejected claims 1–13, 15, 16, and 20–33 under
35 U.S.C. § 103(a) as being unpatentable over Cook (US 7,739,271 B2; June
15, 2010) and Saarinen (US 2007/0024646 A1; Feb. 1, 2007). Final Act. 7–
11.

    The Examiner rejected claim 14 under 35 U.S.C. § 103(a) as being
unpatentable over Cook, Saarinen, and Sakai (US 2007/0229465 A1; Oct. 4,
2007). *Id.* at 11–12.

    The Examiner rejected claims 17–19 under 35 U.S.C. § 103(a) as
being unpatentable over Cook, Saarinen, and Bettis (US 2007/0064619 A1;
Mar. 22, 2007). *Id.* at 12.

## ISSUES

    We focus our discussion below on the following dispositive issues:

1. Did the Examiner err in finding the combination of Cook and
Saarinen teaches or suggests the disputed limitations of "displaying . .
. a plurality of icons corresponding to at least some of the plurality of
lists of information about online video items," "in response to
detecting a finger gesture on a respective icon in the plurality of icons,
displaying ... a corresponding list of information about online video
items," and "displaying ... a first list of information about online video
items in a plurality of lists of information about online video items,"
as recited in claim 1?

3

Appeal 2013-005333
Application 11/968,067

2. Did the Examiner err in finding the combination of Cook and Saarinen teaches or suggests the disputed limitations of:

> the plurality of lists of information about online video items include at least two of: a list of information about featured online video items, a list of information about most recently added online video items, a list of information about most viewed online video items, a list of information about top rated online video items, a list of information about online video items bookmarked by a user of the computing device, and a list of information about online video items viewed by a user of the computing device

as recited in dependent claim 4?

3. Did the Examiner err in finding the combination of Cook and Saarinen teaches or suggests "a configuration icon that when activated initiates the display of a user interface for configuring which icons corresponding to at least some of the plurality of lists are displayed with the first list of information," as recited in dependent claim 9?

4. Did the Examiner err in finding the combination of Cook and Saarinen teaches or suggests "visually replacing the second icon with the first icon," as recited in dependent claim 10?

5. Did the Examiner err in finding the combination of Cook and Saarinen teaches or suggests "the additional information about the particular online video item includes information about related online video items," as recited in dependent claim 23?

ANALYSIS

Claim 1

We conclude the Examiner did not err in finding one skilled in the art

4

**A5**

Appeal 2013-005333
Application 11/968,067

would have recognized the combination of Cook and Saarinen teaches or suggests the disputed limitations of claim 1. Appellants argue Cook does not teach or suggest displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items. App. Br. 15–19. Appellants also argue:

> Cook does not teach or suggest: (1) that the playlist corresponds to a respective icon and (2) that the playlist is displayed in response to detecting a finger gesture on a respective icon [that corresponds to a list of information about online video items]. Moreover, songs (audio) are not online video items.

App. Br. 20. Additionally, Appellants argue Cook and Saarinen do not teach or suggest displaying a first list of information about online video items in a plurality of lists of information about online video items. App. Br. 22–24.

The Examiner responds that in Cook, the lists can be items 1–3 of Figure 3b, where each item contains information regarding the respective album, which is represented by an icon. *See* Ans. 4. Moreover, the Examiner finds Saarinen teaches a touch screen and detecting a finger gesture. *See* Final Act. 8.

> At the outset, we note that:

> Section 103(a) forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). We find that the evidence of record supports the Examiner's finding the Saarinen's touch

5

**A6**

Appeal 2013-005333
Application 11/968,067

screen and finger gestures (*see*, *e.g.,* Saarinen ¶¶ 37, 43), combined with Cook's icons and plurality of lists of information (*see* Cook Fig. 3b), renders obvious the disputed limitations of claim 1.

Although Appellants argue songs "are not online video items" (App. Br. 20), "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR*, 550 U.S. at 421. Moreover, as the Examiner finds (Final Act. 8), Cook contemplates the use of various types of media, such as video, and is no way limited to use with merely songs or audio. *See*, *e.g.,* Cook Abstract, Title, Fig. 4, 2:39–41. Therefore, we are unpersuaded by Appellants' arguments (*see* App. Br. 15–24) that the combination of Cook and Saarinen does not teach or suggest the disputed limitations of claim 1.

Accordingly, we sustain the Examiner's rejection of claim 1 under 35 U.S.C. § 103(a). Because Appellants have not presented separate patentability arguments for pending claims 2, 3, 5–8, 12–22, and 24–33 or have reiterated substantially the same patentability arguments as those previously discussed for claim 1 (App. Br. 15–24), we also sustain the rejections of pending claims 2, 3, 5–8, 12–22, and 24–33. *See* 37 C.F.R. § 41.37(c)(1)(iv)(2012).

Dependent Claim 4

Appellants argue Cook does not teach or suggest the limitations of claim 4. App. Br. 24–26. Appellants merely reiterate what the disputed claim limitations recite and refer to the teachings of Cook. *See id.* Merely reciting the language of the claims and asserting that the cited prior art reference does not teach or suggest each claim limitation is insufficient. *See* 37 C.F.R. § 41.37(c)(1)(iv)(2012) ("A statement which merely points out

6

**A7**

Appeal 2013-005333
Application 11/968,067

what a claim recites will not be considered an argument for separate patentability of the claim."); *see also In re Lovin*, 652 F.3d 1349, 1357 (Fed. Cir. 2011) ("[W]e hold that the Board reasonably interpreted Rule 41.37 to require more substantive arguments in an appeal brief than a mere recitation of the claim elements and a naked assertion that the corresponding elements were not found in the prior art."); *cf. In re Baxter Travenol Labs.*, 952 F.2d 388, 391 (Fed. Cir. 1991) ("It is not the function of this court to examine the claims in greater detail than argued by an appellant, looking for [patentable] distinctions over the prior art."). It follows that the Examiner has not erred in concluding that the combination of Cook and Saarinen renders dependent claim 4 unpatentable.

Dependent Claim 9

We are not persuaded by Appellants' argument that because Cook does not recite the terms "configure" or "configuration," it does not teach the concept of the disputed limitations of claim 9. App. Br. 26–27. Instead, we agree with the Examiner's finding that Cook describes editing operations for a playlist, as well as a function with an interface that directs the user to take actions. Ans. 7; Cook 8:37–60. Accordingly, we find that the evidence of record supports the Examiner's rejection of claim 9 under 35 U.S.C. § 103.

Dependent Claims 10 and 11

Appellants argue, and we agree, that paragraph 104 of Saarinen describes copying a selected content from a first application, selecting a second application using one of icons 67, and pasting the selected content into the second application. We find that paragraph 104 of Saarinen does not teach or suggest "visually *replacing* the second *icon* with the first *icon*,"

7

Appeal 2013-005333
Application 11/968,067

as recited in claim 10. App. Br. 29 (emphasis added). Accordingly, we find
the evidence of record does not support the Examiner's rejection of
dependent claim 10. For the same reasons, we do not sustain the rejection of
dependent claim 11, which depends from claim 10.

Dependent Claim 23

Appellants argue that "col. 9:43-54 of Cook does not describe the
concept of any 'related items,' let alone 'related online video items.'" App.
Br. 30. The Examiner finds Cook discloses "**[a]dditional product
information** can be provided in the 'Reviews' 503 tab [of Figure 5]." Ans.
8. In the Reply Brief, Appellants argue that even if the product is a video,
there is no evidence that such information is about "related" online video
items, i.e., different video items. *See* Reply Br. 20. We are unpersuaded by
this argument because we agree with the Examiner's finding that it would
have been obvious to one skilled in the art that additional product
information, such as information included in Reviews 503 tab of Cook
Figure 5, includes "*information* about related online video items," as recited
in claim 23 (emphasis added). Moreover, we find that Cook describes, for
example, "recommendations based on the selected product," (Cook 9:15–16,
Fig. 5 item 509; Ans. 8), as well as the concept of "*related* product
*information*," *id.* at 3:52–53 (emphasis added). Therefore, we find that the
evidence of record supports the Examiner's rejection of claim 23 under
35 U.S.C. § 103.

DECISION

We reverse the rejections of dependent claims 10 and 11.

We affirm the rejections of claims 1–9 and 12–33.

8

**A9**

Appeal 2013-005333
Application 11/968,067

<u>AFFIRMED</u>

ACP

# Patent Application No. 11/968,067
# (Amended Claims)

## VIII.   CLAIMS APPENDIX

The following listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.      A method, comprising:

at a portable electronic device with a touch screen display:

displaying, on the touch screen display of the portable electronic device, a first list of information about online video items in a plurality of lists of information about online video items;

displaying, on the touch screen display of the portable electronic device, a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a moving finger gesture on the first list of information about online video items, scrolling the first list of information about online video items on the touch screen display of the portable electronic device;

in response to detecting a tap gesture on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item;

in response to detecting a finger gesture on a second portion of the row in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, displaying, on the touch screen display of the portable electronic device, additional information about the particular online video item; and

in response to detecting a finger gesture on a respective icon in the plurality of icons, displaying, on the touch screen display of the portable electronic device, a corresponding list of information about online video items.

2.    A method, comprising:

at a portable electronic device with a touch screen display:

displaying, on the touch screen display of the portable electronic device, a first list of information about online video items in a plurality of lists of information about online video items;

displaying, on the touch screen display of the portable electronic device, a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a moving finger gesture on the first list of information about online video items, scrolling the first list of information about online video items on the touch screen display of the portable electronic device;

in response to detecting a tap gesture on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item; and

in response to detecting a finger gesture on a respective icon in the plurality of icons, displaying, on the touch screen display of the portable electronic device, a corresponding list of information about online video items.

3.    The method of claim 2, wherein, in response to detecting a finger gesture on a second portion of the row in the first list of information about online video items, wherein the second

portion of the row is different from the first portion of the row, displaying additional information about the particular online video item.

4.     The method of claim 2, wherein the plurality of lists of information about online video items include at least two of: a list of information about featured online video items, a list of information about most recently added online video items, a list of information about most viewed online video items, a list of information about top rated online video items, a list of information about online video items bookmarked by a user of the computing device, and a list of information about online video items viewed by a user of the computing device.

5.     The method of claim 2, wherein a respective list of information about online video items is displayed in a portrait orientation of the touch screen display.

6.     The method of claim 2, wherein the row has a width, the touch screen has a width and the width of the row is substantially the same as the width of the touch screen display.

7.     The method of claim 2, wherein the touch screen display has an area and the particular online video item uses substantially all of the touch screen display area when the particular online video item is played.

8.     The method of claim 2, including displaying a search icon that when activated initiates the display of a user interface for searching for online video items.

9.     The method of claim 2, including displaying an icon that when activated initiates the display of:
    icons corresponding to at least some of the plurality of lists of information about online video items, and
    a configuration icon that when activated initiates the display of a user interface for configuring which icons corresponding to at least some of the plurality of lists are  displayed with the first list of information.

DB2/ 23574135

10.    The method of claim 9, wherein

after detecting a gesture on the configuration icon,

detecting a finger-down event at a first icon in a plurality of icons;

detecting one or more finger-dragging events on the touch screen display;

moving the first icon on the touch screen display along a path determined by the finger-dragging events until the first icon at least in part overlaps a second icon in the plurality of icons;

detecting a finger-up event at the second icon; and

visually replacing the second icon with the first icon.

11.    The method of claim 10, wherein while moving the first icon on the touch screen display, displaying the first icon in a manner visually distinguishable from other icons on the touch screen display.

12.    (Previously Presented) The method of claim 2, wherein the particular online video item is played in a landscape orientation of the touch screen display.

13.    The method of claim 2, wherein

in response to detecting a finger gesture on the touch screen display while the particular online video item is playing, displaying one or more playback controls.

14.    The method of claim 13, wherein the one or more playback controls comprise a play icon, a pause icon, a sound volume icon, and/or a playback progress bar icon.

15.    The method of claim 13, wherein displaying one or more playback controls comprises displaying one or more playback controls on top of the particular online video item.

16.    The method of claim 13, including, while playing the particular online video item, ceasing to display the one or more playback controls.

17.     The method of claim 16, wherein ceasing to display the one or more playback controls comprises fading out the one or more playback controls.

18.     The method of claim 16, wherein the display of the one or more playback controls is ceased after a predetermined time.

19.     The method of claim 16, wherein the display of the one or more playback controls is ceased after no contact is detected with the touch screen display for a predetermined time.

20.     The method of claim 2, wherein

in response to detecting a finger gesture on the touch screen display while the particular online video item is playing, displaying a bookmark icon that, if activated by another finger gesture, bookmarks the particular online video item.

21.     The method of claim 2, wherein

in response to detecting a finger gesture on the touch screen display while the particular online video item is playing, displaying a sharing icon that, if activated by another finger gesture, initiates creation of an electronic message to another user that includes a link to the particular online video item.

22.     The method of claim 2, wherein

in response to detecting a finger gesture on the touch screen display while the particular online video item is playing, displaying a sharing icon that, if activated by another finger gesture, initiates creation of an electronic message to another user that includes an online address for the particular online video item.

23.     The method of claim 3, wherein the additional information about the particular online video item includes information about related online video items.

24.     The method of claim 3, wherein

in response to detecting a finger gesture on the second portion of the row, displaying a bookmark icon that, if activated by another finger gesture, bookmarks the particular online video item.

25.    The method of claim 3, wherein

in response to detecting a finger gesture on the second portion of the row, displaying a sharing icon that, if activated by another finger gesture, initiates creation of an electronic message to another user that includes a link to or an online address for the particular online video item.

26.    The method of claim 3, wherein

in response to detecting a finger gesture on the second portion of the row,

displaying a bookmark icon and a sharing icon if the particular online video item is not bookmarked, and

displaying an enlarged sharing icon without the bookmark icon if the particular online video item is already bookmarked.

27.    The method of claim 2, wherein

in response to detecting a finger gesture on a playback completion icon,

ceasing to play the particular online video item, and

displaying again the first list of information.

28.    The method of claim 27, wherein the finger gesture detected on the playback completion icon comprises a tap gesture.

29.    A graphical user interface on a portable electronic device with a touch screen display, comprising:

a first list of information about online video items in a plurality of lists of information about  online video items; and

a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

DB2/ 23574135

**A20**

wherein:

in response to detecting a finger gesture on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

> a request is initiated for the particular online video item from a remote computer,
>
> the particular online video item is received, and
>
> the particular online video item is played; and

in response to detecting a finger gesture on a respective icon in the plurality of icons, a corresponding list of information about online video items is displayed.

30.    The graphical user interface of claim 29, wherein:

in response to detecting a finger gesture on a second portion of the row in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, additional information is displayed about the particular online video item.

31.    A portable computing device, comprising:

a touch screen display;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:

> instructions for displaying a first list of information about online video items in a plurality of lists of information about online video items;
>
> instructions for displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;
>
> instructions for, in response to detecting a moving finger gesture on the first list of information about online video items, scrolling the first list of information about online video items;

DB2/ 23574135

**A21**

instructions for, in response to detecting a tap gesture on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item; and

instructions for, in response to detecting a finger gesture on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

32.    A non-transitory computer readable storage medium storing one or more programs, the one or more programs comprising instructions, which when executed by a portable computing device with a touch screen display, cause the device to:

display a first list of information about online video items in a plurality of lists of information about online video items;

display a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a moving finger gesture on the first list of information about online video items, scroll the first list of information about online video items;

in response to detecting a tap gesture on a first portion of a row in the first list of information about  online video items, wherein the row contains information about a particular online video item:

initiate a request for the particular online video item from a remote computer,

receive the particular online video item, and

play the particular online video item; and

in response to detecting a finger gesture on a respective icon in the plurality of icons, display a corresponding list of information about online video items.

DB2/ 23574135

**A22**

33.    A portable computing device with a touch screen display, comprising:

        means for displaying a first list of information about online video items in a plurality of lists of information about online video items;

        means for displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

        means for, in response to detecting a moving finger gesture on the first list of information about online video items, scrolling the first list of information about online video items;

        means for, in response to detecting a tap gesture on a first portion of a row in the first list of information about  online video items, wherein the row contains information about a particular online video item:

                initiating a request for the particular online video item from a remote computer,

                receiving the particular online video item, and

                playing the particular online video item; and

        means for, in response to detecting a finger gesture on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

DB2/ 23574135

# Patent Application No. 11/968,067
# (Amended Abstract)

**Amendments to the Specification**

Please amend the Abstract as follows:

ABSTRACT

A portable electronic device with a touch screen display [[:]] displays a first list of information about online video items in a plurality of ~~lists;~~ lists. The device displays a plurality of icons corresponding to at least some of the plurality of ~~lists;~~ lists. [[in]] In response to detecting a moving finger gesture on the first list ~~of information about content items,~~ the device scrolls the first list. ~~list of information;~~ [[in]] In response to detecting a stationary finger ~~contact~~ gesture on a first portion of a row in the first list ~~of information,~~ ~~wherein~~ where the row contains information about a particular online video item, the device: initiates a request for the particular online video item from a remote computer, receives the particular online video item, and plays the particular online video ~~item;~~ item. ~~and, in~~ In response to detecting a finger ~~contact~~ gesture on a respective icon in the plurality of icons, the device displays a corresponding list of information about online video items.

# Patent Application No. 11/968,067
# (Amended Figure 5B)

Appl. No. 11/968,067
REPLACEMENT SHEET



A512

# Patent Application Publication
# No. US 2008/0320391



US 20080320391A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.:  **US 2008/0320391 A1**

Lemay et al.     (43) **Pub. Date:**     **Dec. 25, 2008**

(54) **PORTABLE MULTIFUNCTION DEVICE, METHOD, AND GRAPHICAL USER INTERFACE FOR PLAYING ONLINE VIDEOS**

(76) Inventors:     **Stephen O. Lemay**, San Francisco, CA (US); **Michael Matas**, Palo Alto, CA (US); **Timothy P. Omernick**, Mountain View, CA (US); **Richard Williamson**, Los Gatos, CA (US); **Imran Chaudhri**, San Francisco, CA (US); **Charles J. Pisula**, San Jose, CA (US); **Marcel Van Os**, San Francisco, CA (US)

Correspondence Address:
**MORGAN LEWIS & BOCKIUS LLP/ AI**
**2 PALO ALTO SQUARE, 3000 EL CAMINO REAL**
**PALO ALTO, CA 94306 (US)**

(21) Appl. No.:     **11/968,067**

(22) Filed:     **Dec. 31, 2007**

**Related U.S. Application Data**

(60) Provisional application No. 60/937,993, filed on Jun. 29, 2007, provisional application No. 60/936,562, filed on Jun. 20, 2007.

**Publication Classification**

(51) **Int. Cl.**
*G06F 3/048*     (2006.01)
(52) **U.S. Cl.** ........................................ **715/702**; 715/716

(57)     **ABSTRACT**

A portable electronic device with a touch screen display: displays a first list of information about online video items in a plurality of lists; displays a plurality of icons corresponding to at least some of the plurality of lists; in response to detecting a moving finger gesture on the first list of information about content items, scrolls the first list of information; in response to detecting a stationary finger contact on a first portion of a row in the first list of information, wherein the row contains information about a particular online video item: initiates a request for the particular online video item from a remote computer, receives the particular online video item, and plays the particular online video item; and, in response to detecting a finger contact on a respective icon in the plurality of icons, displays a corresponding list of information about online video items.



A952

Memory 102
Portable Multifunction Device 100
Operating System 126
Communication Module 128
Contact/Motion Module 130
Graphics Module 132
Text Input Module 134
GPS Module 135
Applications 136
Contacts Module 137
Telephone Module 138
Video Conference Module 139
E-mail Client Module 140
Instant Messaging Module 141
Blogging Module 142
Camera Module 143
Image Management Module 144
Video Player Module 145
Music Player Module 146
Browsing Module 147
Applications (continued) 136
Calendar Module 148
Widget Modules 149
Weather Widget 149-1
Stocks Widget 149-2
Calculator Widget 149-3
Alarm Clock Widget 149-4
Dictionary Widget 149-5
User-Created Widget(s) 149-6
Widget Creator Module 150
Search Module 151
Power System 162
External Port 124
RF Circuitry 108
Speaker 111
Audio Circuitry 110
Microphone 113
Proximity Sensor 166
Accelerometer(s) 168
Controller 122
Processor(s) 120
Peripherals Interface 118
104
103
I/O Subsystem 158
106
Display Controller 156
Optical sensor(s) Controller
Other Input Controller(s) 160
Touch-Sensitive Display System 112
Optical Sensor(s) 164
Other Input Control Devices 116
Figure 1A



Memory 102
Operating System
Communication Module
Contact/Motion Module
Graphics Module
Text Input Module
GPS Module
Applications
Contacts Module
Telephone Module
Video Conference Module
E-mail Client Module
Instant Messaging Module
Blogging Module
Camera Module
Image Management Module
Video and Music Player Module
Notes Module
Map Module
Browsing Module
126
128
130
132
134
135
136
137
138
139
140
141
142
143
144
152
153
154
147
Portable Multifunction Device 100
Applications (continued)
Calendar Module
Widget Modules
Weather Widget(s)
Stocks Widget
Calculator Widget
Alarm Clock Widget
Dictionary Widget
User-Created Widget(s)
Widget Creator Module
Search Module
Online Video Module
136
148
149
149-1
149-2
149-3
149-4
149-5
149-6
150
151
155
Power System
162
External Port
124
RF Circuitry 108
Speaker
111
Audio Circuitry 110
Microphone 113
Proximity Sensor
166
Accelerometer(s) 168
103
118
104
Controller
122
Peripherals Interface
Processor(s)
120
I/O Subsystem
158
106
Display Controller
Optical sensor(s) Controller
Other Input Controller(s)
160
156
Touch-Sensitive Display System
112
Optical Sensor(s) 164
Other Input Control Devices
116

Figure 1B

**Patent Application Publication**    **Dec. 25, 2008  Sheet 3 of 22**    **US 2008/0320391 A1**



Portable Multifunction Device 100

206    210    212

Speaker 111    Optical Sensor 164    Proximity Sensor 166

208

208

200

210 is SIM card slot
212 is headphone jack

202

Touch Screen 112

Microphone 113    Home 204    Accelerometer(s) 168

External Port 124

**Figure 2**

A955

Patent Application Publication    Dec. 25, 2008  Sheet 4 of 22    US 2008/0320391 A1



**Figure 3**



**Figure 4A**



**Figure 4B**



Portable Multifunction Device
100
206
208
208
Speaker 111
Optical Sensor 164
Proximity Sensor 166
2300E
402
Current Time 404
406
2390
2392
2394
All
Today
This Week
2330-1
2338-1
Pokemon Theme Music
2000 views
3:14 smosh
2340-1
2344-1
2338-2
SNL – Digital Short
1500 views
2:45 NBC
2340-2
2344-2
2336
2338-3
guitar
2340-3
1000 views
5:20 guitar90
2344-3
2338-4
shoes
2340-4
900 views
3:51 CowSayingMoo
2344-4
2338-5
Quick Change Artists ...
100 views
2340-5
2:39 ChrisInScotland
2344-5
Featured
Most Viewed
Bookmarks
2334
Search
2368
More
2332-3
2332-1
2332-2
Microphone 113
Home 204
Accelerometer(s) 168

Figure 5A



**Figure 5B**

Case: 15-1973    Document: 21    Page: 111    Filed: 11/02/2015



Figure 5C



**Figure 5D**



**Figure 5E**



**Figure 5F**



**Figure 5G**



**Figure 5H**



**Figure 5I**



**Figure 5J**



**Figure 5K**



**Figure 5L**



**Figure 5M**



**Figure 5N**



**Figure 5O**



**Figure 5P**

US 2008/0320391 A1

Dec. 25, 2008

1

# PORTABLE MULTIFUNCTION DEVICE, METHOD, AND GRAPHICAL USER INTERFACE FOR PLAYING ONLINE VIDEOS

## RELATED APPLICATIONS

[0001] This application claims priority to U.S. Provisional Patent Application Nos. 60/937,993, "Portable Multifunction Device," filed Jun. 29, 2007; and 60/936,562, "Portable Multifunction Device, Method, and Graphical User Interface for Playing Online Videos," filed Jun. 20, 2007. Both of these applications are incorporated by reference herein in their entirety.

[0002] This application is related to the following applications: (1) U.S. patent application Ser. No. 10/188,182, "Touch Pad For Handheld Device," filed Jul. 1, 2002; (2) U.S. patent application Ser. No. 10/722,948, "Touch Pad For Handheld Device," filed Nov. 25, 2003; (3) U.S. patent application Ser. No. 10/643,256, "Movable Touch Pad With Added Functionality," filed Aug. 18, 2003; (4) U.S. patent application Ser. No. 10/654,108, "Ambidextrous Mouse," filed Sep. 2, 2003; (5) U.S. patent application Ser. No. 10/840,862, "Multipoint Touchscreen," filed May 6, 2004; (6) U.S. patent application Ser. No. 10/903,964, "Gestures For Touch Sensitive Input Devices," filed Jul. 30, 2004; (7) U.S. patent application Ser. No. 11/038,590, "Mode-Based Graphical User Interfaces For Touch Sensitive Input Devices" filed Jan. 18, 2005; (8) U.S. patent application Ser. No. 11/057,050, "Display Actuator," filed Feb. 11, 2005; (9) U.S. Provisional Patent Application No. 60/658,777, "Multi-Functional Hand-Held Device," filed Mar. 4, 2005; (10) U.S. patent application Ser. No. 11/367, 749, "Multi-Functional Hand-Held Device," filed Mar. 3, 2006; (11) U.S. Provisional Patent Application No. 60/824, 769, "Portable Multifunction Device," filed Sep. 6, 2006; (12) U.S. Provisional Patent Application No. 60/879,253, "Portable Multifunction Device," filed Jan. 7, 2007; and (13) U.S. Provisional Patent Application No. 60/879,469, "Portable Multifunction Device," filed Jan. 8, 2007. All of these applications are incorporated by reference herein in their entirety.

## TECHNICAL FIELD

[0003] The disclosed embodiments relate generally to portable electronic devices, and more particularly, to portable devices that access and display online videos.

## BACKGROUND

[0004] As portable electronic devices become more compact, and the number of functions performed by a given device increase, it has become a significant challenge to design a user interface that allows users to easily interact with a multifunction device. This challenge is particular significant for handheld portable devices, which have much smaller screens than desktop or laptop computers. This situation is unfortunate because the user interface is the gateway through which users receive not only content but also responses to user actions or behaviors, including user attempts to access a device's features, tools, and functions. Some portable communication devices (e.g., mobile telephones, sometimes called mobile phones, cell phones, cellular telephones, and the like) have resorted to adding more pushbuttons, increasing the density of push buttons, overloading the functions of pushbuttons, or using complex menu systems to allow a user to access, store and manipulate data. These conventional user interfaces often result in complicated key sequences and menu hierarchies that must be memorized by the user.

[0005] Many conventional user interfaces, such as those that include physical pushbuttons, are also inflexible. This is unfortunate because it may prevent a user interface from being configured and/or adapted by either an application running on the portable device or by users. When coupled with the time consuming requirement to memorize multiple key sequences and menu hierarchies, and the difficulty in activating a desired pushbutton, such inflexibility is frustrating to most users.

[0006] At present, online videos (e.g., videos available at a website such as www.youtube.com) are widely viewed using web browser applications on desktop computers and other computers with relatively large screens. However, it is significantly more difficult to browse, receive, view, and manage online videos on computers with smaller screens, such as handheld devices. This difficulty arises in part because of the small screen size and in part because of the need to navigate through a browser application to a website that includes online videos. Thus, at present, relatively few people browse, receive and view online videos on portable devices with small screens.

[0007] Accordingly, there is a need for portable multifunction devices with more transparent and intuitive user interfaces for browsing, receiving and playing online videos. Such interfaces increase the effectiveness, efficiency and user satisfaction with portable multifunction devices.

## SUMMARY

[0008] The above deficiencies and other problems associated with user interfaces for portable devices are reduced or eliminated by the disclosed portable multifunction device. In some embodiments, the device has a touch-sensitive display (also known as a "touch screen") with a graphical user interface (GUI), one or more processors, memory and one or more modules, programs or sets of instructions stored in the memory for performing multiple functions. In some embodiments, the user interacts with the GUI primarily through finger contacts and gestures on the touch-sensitive display. In some embodiments, the functions may include telephoning, video conferencing, e-mailing, instant messaging, blogging, digital photographing, digital videoing, web browsing, digital music playing, and/or digital video playing. Instructions for performing these functions may be included in a computer program product configured for execution by one or more processors.

[0009] In accordance with some embodiments, a computer-implemented method is performed at a portable electronic device with a touch screen display. The computer-implemented method includes: displaying a first list of information about online video items in a plurality of lists of information about online video items; displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items; in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items; in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item: initiating a request for the particular online video item from a remote computer, receiving the particular online video item, and playing the particular online video item; and, in response to detecting a

finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

[0010] In accordance with some embodiments, a graphical user interface on a portable electronic device with a touch screen display includes: a first list of information about online video items in a plurality of lists of information about online video items; and a plurality of icons corresponding to at least some of the plurality of lists of information about online video items. In response to detecting a finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item: a request is initiated for the particular online video item from a remote computer, the particular online video item is received, and the particular online video item is played. In response to detecting a finger contact on a second portion of the row in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, additional information is displayed about the particular online video item. In response to detecting a finger contact on a respective icon in the plurality of icons, a corresponding list of information about online video items is displayed.

[0011] In accordance with some embodiments, a portable computing device includes: a touch screen display; one or more processors; memory; and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include: instructions for displaying a first list of information about online video items in a plurality of lists of information about online video items; instructions for displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items; instructions for, in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items; instructions for, in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item: initiating a request for the particular online video item from a remote computer, receiving the particular online video item, and playing the particular online video item; and instructions for, in response to detecting a finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

[0012] In accordance with some embodiments, a computer-program product, includes: a computer readable storage medium and a computer program mechanism embedded therein. The computer program mechanism includes instructions, which when executed by a portable computing device with a touch screen display, cause the device to: display a first list of information about online video items in a plurality of lists of information about online video items; display a plurality of icons corresponding to at least some of the plurality of lists of information about online video items; in response to detecting a moving finger gesture on the first list of information about content items, scroll the first list of information about content items; in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item: initiate a request for the particular online video item from a remote computer, receive the particular online video item, and play

the particular online video item; and in response to detecting a finger contact on a respective icon in the plurality of icons, display a corresponding list of information about online video items.

[0013] In accordance with some embodiments, a portable computing device with a touch screen display includes: means for displaying a first list of information about online video items in a plurality of lists of information about online video items; means for displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items; means for, in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items; means for, in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item: initiating a request for the particular online video item from a remote computer, receiving the particular online video item, and playing the particular online video item; and means for, in response to detecting a finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

[0014] Thus, a portable electronic device is provided with a more efficient and intuitive user interface for browsing, receiving and playing online videos.

BRIEF DESCRIPTION OF THE DRAWINGS

[0015] For a better understanding of the aforementioned embodiments of the invention as well as additional embodiments thereof, reference should be made to the Description of Embodiments below, in conjunction with the following drawings in which like reference numerals refer to corresponding parts throughout the figures.

[0016] FIGS. 1A and 1B are block diagrams illustrating portable multifunction devices with touch-sensitive displays in accordance with some embodiments.

[0017] FIG. 2 illustrates a portable multifunction device having a touch screen in accordance with some embodiments.

[0018] FIG. 3 illustrates an exemplary user interface for unlocking a portable electronic device in accordance with some embodiments.

[0019] FIGS. 4A and 4B illustrate exemplary user interfaces for a menu of applications on a portable multifunction device in accordance with some embodiments.

[0020] FIGS. 5A-5P illustrate exemplary user interfaces for an online video application for a portable multifunction device in accordance with some embodiments.

DESCRIPTION OF EMBODIMENTS

[0021] Reference will now be made in detail to embodiments, examples of which are illustrated in the accompanying drawings. In the following detailed description, numerous specific details are set forth in order to provide a thorough understanding of the present invention. However, it will be apparent to one of ordinary skill in the art that the present invention may be practiced without these specific details. In other instances, well-known methods, procedures, components, circuits, and networks have not been described in detail so as not to unnecessarily obscure aspects of the embodiments.

[0022] It will also be understood that, although the terms first, second, etc. may be used herein to describe various

3

elements, these elements should not be limited by these terms. These terms are only used to distinguish one element from another. For example, a first gesture could be termed a second gesture, and, similarly, a second gesture could be termed a first gesture, without departing from the scope of the present invention.

[0023] The terminology used in the description of the invention herein is for the purpose of describing particular embodiments only and is not intended to be limiting of the invention. As used in the description of the invention and the appended claims, the singular forms "a", "an" and "the" are intended to include the plural forms as well, unless the context clearly indicates otherwise. It will also be understood that the term "and/or" as used herein refers to and encompasses any and all possible combinations of one or more of the associated listed items. It will be further understood that the terms "comprises" and/or "comprising," when used in this specification, specify the presence of stated features, integers, steps, operations, elements, and/or components, but do not preclude the presence or addition of one or more other features, integers, steps, operations, elements, components, and/ or groups thereof.

[0024] Embodiments of a portable multifunction device, user interfaces for such devices, and associated processes for using such devices are described. In some embodiments, the device is a portable communications device such as a mobile telephone that also contains other functions, such as PDA and/or music player functions.

[0025] The user interface may include a physical click wheel in addition to a touch screen or a virtual click wheel displayed on the touch screen. A click wheel is a user-interface device that may provide navigation commands based on an angular displacement of the wheel or a point of contact with the wheel by a user of the device. A click wheel may also be used to provide a user command corresponding to selection of one or more items, for example, when the user of the device presses down on at least a portion of the wheel or the center of the wheel. Alternatively, breaking contact with a click wheel image on a touch screen surface may indicate a user command corresponding to selection. For simplicity, in the discussion that follows, a portable multifunction device that includes a touch screen is used as an exemplary embodiment. It should be understood, however, that some of the user interfaces and associated processes may be applied to other devices, such as personal computers and laptop computers, that may include one or more other physical user-interface devices, such as a physical click wheel, a physical keyboard, a mouse and/or a joystick.

[0026] The device supports a variety of applications, such as a telephone application, a video conferencing application, an e-mail application, an instant messaging application, a blogging application, a digital camera application, a digital video camera application, a web browsing application, a digital music player application, and/or a digital video player application.

[0027] The various applications that may be executed on the device may use at least one common physical user-interface device, such as the touch screen. One or more functions of the touch screen as well as corresponding information displayed on the device may be adjusted and/or varied from one application to the next and/or within a respective application. In this way, a common physical architecture (such as

the touch screen) of the device may support the variety of applications with user interfaces that are intuitive and transparent.

[0028] The user interfaces may include one or more soft keyboard embodiments. The soft keyboard embodiments may include standard (QWERTY) and/or non-standard configurations of symbols on the displayed icons of the keyboard, such as those described in U.S. patent application Ser. Nos. 11/459,606, "Keyboards For Portable Electronic Devices," filed Jul. 24, 2006, and 11/459,615, "Touch Screen Keyboards For Portable Electronic Devices," filed Jul. 24, 2006, the contents of which are hereby incorporated by reference in their entirety. The keyboard embodiments may include a reduced number of icons (or soft keys) relative to the number of keys in existing physical keyboards, such as that for a typewriter. This may make it easier for users to select one or more icons in the keyboard, and thus, one or more corresponding symbols. The keyboard embodiments may be adaptive. For example, displayed icons may be modified in accordance with user actions, such as selecting one or more icons and/or one or more corresponding symbols. One or more applications on the portable device may utilize common and/ or different keyboard embodiments. Thus, the keyboard embodiment used may be tailored to at least some of the applications. In some embodiments, one or more keyboard embodiments may be tailored to a respective user. For example, one or more keyboard embodiments may be tailored to a respective user based on a word usage history (lexicography, slang, individual usage) of the respective user. Some of the keyboard embodiments may be adjusted to reduce a probability of a user error when selecting one or more icons, and thus one or more symbols, when using the soft keyboard embodiments.

[0029] Attention is now directed towards embodiments of the device. FIGS. 1A and 1B are block diagrams illustrating portable multifunction devices 100 with touch-sensitive displays 112 in accordance with some embodiments. The touch-sensitive display 112 is sometimes called a "touch screen" for convenience, and may also be known as or called a touch-sensitive display system. The device 100 may include a memory 102 (which may include one or more computer readable storage mediums), a memory controller 122, one or more processing units (CPU's) 120, a peripherals interface 118, RF circuitry 108, audio circuitry 110, a speaker 111, a microphone 113, an input/output (I/O) subsystem 106, other input or control devices 116, and an external port 124. The device 100 may include one or more optical sensors 164. These components may communicate over one or more communication buses or signal lines 103.

[0030] It should be appreciated that the device 100 is only one example of a portable multifunction device 100, and that the device 100 may have more or fewer components than shown, may combine two or more components, or a may have a different configuration or arrangement of the components. The various components shown in FIGS. 1A and 1B may be implemented in hardware, software or a combination of both hardware and software, including one or more signal processing and/or application specific integrated circuits.

[0031] Memory 102 may include high-speed random access memory and may also include non-volatile memory, such as one or more magnetic disk storage devices, flash memory devices, or other non-volatile solid-state memory devices. Access to memory 102 by other components of the

4

device **100**, such as the CPU **120** and the peripherals interface **118**, may be controlled by the memory controller **122**.

[0032]    The peripherals interface **118** couples the input and output peripherals of the device to the CPU **120** and memory **102**. The one or more processors **120** run or execute various software programs and/or sets of instructions stored in memory **102** to perform various functions for the device **100** and to process data.

[0033]    In some embodiments, the peripherals interface **118**, the CPU **120**, and the memory controller **122** may be implemented on a single chip, such as a chip **104**. In some other embodiments, they may be implemented on separate chips.

[0034]    The RF (radio frequency) circuitry **108** receives and sends RF signals, also called electromagnetic signals. The RF circuitry **108** converts electrical signals to/from electromagnetic signals and communicates with communications networks and other communications devices via the electromagnetic signals. The RF circuitry **108** may include well-known circuitry for performing these functions, including but not limited to an antenna system, an RF transceiver, one or more amplifiers, a tuner, one or more oscillators, a digital signal processor, a CODEC chipset, a subscriber identity module (SIM) card, memory, and so forth. The RF circuitry **108** may communicate with networks, such as the Internet, also referred to as the World Wide Web (WWW), an intranet and/or a wireless network, such as a cellular telephone network, a wireless local area network (LAN) and/or a metropolitan area network (MAN), and other devices by wireless communication. The wireless communication may use any of a plurality of communications standards, protocols and technologies, including but not limited to Global System for Mobile Communications (GSM), Enhanced Data GSM Environment (EDGE), high-speed downlink packet access (HSDPA), wideband code division multiple access (W-CDMA), code division multiple access (CDMA), time division multiple access (TDMA), Bluetooth, Wireless Fidelity (Wi-Fi) (e.g., IEEE 802.11a, IEEE 802.11b, IEEE 802.11g and/or IEEE 802.11n), voice over Internet Protocol (VoIP), Wi-MAX, a protocol for email (e.g., Internet message access protocol (IMAP) and/or post office protocol (POP)), instant messaging (e.g., extensible messaging and presence protocol (XMPP), Session Initiation Protocol for Instant Messaging and Presence Leveraging Extensions (SIMPLE), and/or Instant Messaging and Presence Service (IMPS)), and/or Short Message Service (SMS)), or any other suitable communication protocol, including communication protocols not yet developed as of the filing date of this document.

[0035]    The audio circuitry **110**, the speaker **111**, and the microphone **113** provide an audio interface between a user and the device **100**. The audio circuitry **110** receives audio data from the peripherals interface **118**, converts the audio data to an electrical signal, and transmits the electrical signal to the speaker **111**. The speaker **111** converts the electrical signal to human-audible sound waves. The audio circuitry **110** also receives electrical signals converted by the microphone **113** from sound waves. The audio circuitry **110** converts the electrical signal to audio data and transmits the audio data to the peripherals interface **118** for processing. Audio data may be retrieved from and/or transmitted to memory **102** and/or the RF circuitry **108** by the peripherals interface **118**. In some embodiments, the audio circuitry **110** also includes a headset jack (e.g. **212**, FIG. **2**). The headset jack provides an interface between the audio circuitry **110** and removable audio input/output peripherals, such as output-only headphones or a headset with both output (e.g., a headphone for one or both ears) and input (e.g., a microphone).

[0036]    The I/O subsystem **106** couples input/output peripherals on the device **100**, such as the touch screen **112** and other input/control devices **116**, to the peripherals interface **118**. The I/O subsystem **106** may include a display controller **156** and one or more input controllers **160** for other input or control devices. The one or more input controllers **160** receive/send electrical signals from/to other input or control devices **116**. The other input/control devices **116** may include physical buttons (e.g., push buttons, rocker buttons, etc.), dials, slider switches, joysticks, click wheels, and so forth. In some alternate embodiments, input controller(s) **160** may be coupled to any (or none) of the following: a keyboard, infrared port, USB port, and a pointer device such as a mouse. The one or more buttons (e.g., **208**, FIG. **2**) may include an up/down button for volume control of the speaker **111** and/or the microphone **113**. The one or more buttons may include a push button (e.g., **206**, FIG. **2**). A quick press of the push button may disengage a lock of the touch screen **112** or begin a process that uses gestures on the touch screen to unlock the device, as described in U.S. patent application Ser. No. 11/322,549, "Unlocking a Device by Performing Gestures on an Unlock Image," filed Dec. 23, 2005, which is hereby incorporated by reference in its entirety. A longer press of the push button (e.g., **206**) may turn power to the device **100** on or off. The user may be able to customize a functionality of one or more of the buttons. The touch screen **112** is used to implement virtual or soft buttons and one or more soft keyboards.

[0037]    The touch-sensitive touch screen **112** provides an input interface and an output interface between the device and a user. The display controller **156** receives and/or sends electrical signals from/to the touch screen **112**. The touch screen **112** displays visual output to the user. The visual output may include graphics, text, icons, video, and any combination thereof (collectively termed "graphics"). In some embodiments, some or all of the visual output may correspond to user-interface objects, further details of which are described below.

[0038]    A touch screen **112** has a touch-sensitive surface, sensor or set of sensors that accepts input from the user based on haptic and/or tactile contact. The touch screen **112** and the display controller **156** (along with any associated modules and/or sets of instructions in memory **102**) detect contact (and any movement or breaking of the contact) on the touch screen **112** and converts the detected contact into interaction with user-interface objects (e.g., one or more soft keys, icons, web pages or images) that are displayed on the touch screen. In an exemplary embodiment, a point of contact between a touch screen **112** and the user corresponds to a finger of the user.

[0039]    The touch screen **112** may use LCD (liquid crystal display) technology, or LPD (light emitting polymer display) technology, although other display technologies may be used in other embodiments. The touch screen **112** and the display controller **156** may detect contact and any movement or breaking thereof using any of a plurality of touch sensing technologies now known or later developed, including but not limited to capacitive, resistive, infrared, and surface acoustic wave technologies, as well as other proximity sensor arrays or other elements for determining one or more points of contact with a touch screen **112**.

5

[0040]    A touch-sensitive display in some embodiments of the touch screen **112** may be analogous to the multi-touch sensitive tablets described in the following U.S. Pat. Nos.: 6,323,846 (Westerman et al.), 6,570,557 (Westerman et al.), and/or 6,677,932 (Westerman), and/or U.S. Patent Publication 2002/0015024A1, each of which is hereby incorporated by reference in its entirety. However, a touch screen **112** displays visual output from the portable device **100**, whereas touch sensitive tablets do not provide visual output.

[0041]    A touch-sensitive display in some embodiments of the touch screen **112** may be as described in the following applications: (1) U.S. patent application Ser. No. 11/381,313, "Multipoint Touch Surface Controller," filed May 2, 2006; (2) U.S. patent application Ser. No. 10/840,862, "Multipoint Touchscreen," filed May 6, 2004; (3) U.S. patent application Ser. No. 10/903,964, "Gestures For Touch Sensitive Input Devices," filed Jul. 30, 2004; (4) U.S. patent application Ser. No. 11/048,264, "Gestures For Touch Sensitive Input Devices," filed Jan. 31, 2005; (5) U.S. patent application Ser. No. 11/038,590, "Mode-Based Graphical User Interfaces For Touch Sensitive Input Devices," filed Jan. 18, 2005; (6) U.S. patent application Ser. No. 11/228,758, "Virtual Input Device Placement On A Touch Screen User Interface," filed Sep. 16, 2005; (7) U.S. patent application Ser. No. 11/228,700, "Operation Of A Computer With A Touch Screen Interface," filed Sep. 16, 2005; (8) U.S. patent application Ser. No. 11/228,737, "Activating Virtual Keys Of A Touch-Screen Virtual Keyboard," filed Sep. 16, 2005; and (9) U.S. patent application Ser. No. 11/367,749, "Multi-Functional Hand-Held Device," filed Mar. 3, 2006. All of these applications are incorporated by reference herein in their entirety.

[0042]    The touch screen **112** may have a resolution in excess of 100 dpi. In an exemplary embodiment, the touch screen has a resolution of approximately 160 dpi. The user may make contact with the touch screen **112** using any suitable object or appendage, such as a stylus, a finger, and so forth. In some embodiments, the user interface is designed to work primarily with finger-based contacts and gestures, which are much less precise than stylus-based input due to the larger area of contact of a finger on the touch screen. In some embodiments, the device translates the rough finger-based input into a precise pointer/cursor position or command for performing the actions desired by the user.

[0043]    In some embodiments, in addition to the touch screen, the device **100** may include a touchpad (not shown) for activating or deactivating particular functions. In some embodiments, the touchpad is a touch-sensitive area of the device that, unlike the touch screen, does not display visual output. The touchpad may be a touch-sensitive surface that is separate from the touch screen **112** or an extension of the touch-sensitive surface formed by the touch screen.

[0044]    In some embodiments, the device **100** may include a physical or virtual click wheel as an input control device **116**. A user may navigate among and interact with one or more graphical objects (henceforth referred to as icons) displayed in the touch screen **112** by rotating the click wheel or by moving a point of contact with the click wheel (e.g., where the amount of movement of the point of contact is measured by its angular displacement with respect to a center point of the click wheel). The click wheel may also be used to select one or more of the displayed icons. For example, the user may press down on at least a portion of the click wheel or an associated button. User commands and navigation commands provided by the user via the click wheel may be processed by

an input controller **160** as well as one or more of the modules and/or sets of instructions in memory **102**. For a virtual click wheel, the click wheel and click wheel controller may be part of the touch screen **112** and the display controller **156**, respectively. For a virtual click wheel, the click wheel may be either an opaque or semitransparent object that appears and disappears on the touch screen display in response to user interaction with the device. In some embodiments, a virtual click wheel is displayed on the touch screen of a portable multifunction device and operated by user contact with the touch screen.

[0045]    The device **100** also includes a power system **162** for powering the various components. The power system **162** may include a power management system, one or more power sources (e.g., battery, alternating current (AC)), a recharging system, a power failure detection circuit, a power converter or inverter, a power status indicator (e.g., a light-emitting diode (LED)) and any other components associated with the generation, management and distribution of power in portable devices.

[0046]    The device **100** may also include one or more optical sensors **164**. FIGS. 1A and 1B show an optical sensor coupled to an optical sensor controller **158** in I/O subsystem **106**. The optical sensor **164** may include charge-coupled device (CCD) or complementary metal-oxide semiconductor (CMOS) phototransistors. The optical sensor **164** receives light from the environment, projected through one or more lens, and converts the light to data representing an image. In conjunction with an imaging module **143** (also called a camera module), the optical sensor **164** may capture still images or video. In some embodiments, an optical sensor is located on the back of the device **100**, opposite the touch screen display **112** on the front of the device, so that the touch screen display may be used as a viewfinder for either still and/or video image acquisition. In some embodiments, an optical sensor is located on the front of the device so that the user's image may be obtained for videoconferencing while the user views the other video conference participants on the touch screen display. In some embodiments, the position of the optical sensor **164** can be changed by the user (e.g., by rotating the lens and the sensor in the device housing) so that a single optical sensor **164** may be used along with the touch screen display for both video conferencing and still and/or video image acquisition.

[0047]    The device **100** may also include one or more proximity sensors **166**. FIGS. 1A and 1B show a proximity sensor **166** coupled to the peripherals interface **118**. Alternately, the proximity sensor **166** may be coupled to an input controller **160** in the I/O subsystem **106**. The proximity sensor **166** may perform as described in U.S. patent application Ser. Nos. 11/241,839, "Proximity Detector In Handheld Device," filed Sep. 30, 2007; 11/240,788, "Proximity Detector In Handheld Device," filed Sep. 30, 2007; 11/620,702, "Using Ambient Light Sensor To Augment Proximity Sensor Output"; 11/586, 862, "Automated Response To And Sensing Of User Activity In Portable Devices," filed Oct. 24, 2006; and 11/638,251, "Methods And Systems For Automatic Configuration Of Peripherals," which are hereby incorporated by reference in their entirety. In some embodiments, the proximity sensor turns off and disables the touch screen **112** when the multifunction device is placed near the user's ear (e.g., when the user is making a phone call). In some embodiments, the proximity sensor keeps the screen off when the device is in the user's pocket, purse, or other dark area to prevent unnecessary battery drainage when the device is a locked state.

US 2008/0320391 A1

Dec. 25, 2008

6

[0048] The device **100** may also include one or more accelerometers **168**. FIGS. 1A and 1B show an accelerometer **168** coupled to the peripherals interface **118**. Alternately, the accelerometer **168** may be coupled to an input controller **160** in the I/O subsystem **106**. The accelerometer **168** may perform as described in U.S. Patent Publication No. 20050190059, "Acceleration-based Theft Detection System for Portable Electronic Devices," and U.S. Patent Publication No. 20060017692, "Methods And Apparatuses For Operating A Portable Device Based On An Accelerometer," both of which are which are incorporated herein by reference in their entirety. In some embodiments, information is displayed on the touch screen display in a portrait view or a landscape view based on an analysis of data received from the one or more accelerometers.

[0049] In some embodiments, the software components stored in memory **102** may include an operating system **126**, a communication module (or set of instructions) **128**, a contact/motion module (or set of instructions) **130**, a graphics module (or set of instructions) **132**, a text input module (or set of instructions) **134**, a Global Positioning System (GPS) module (or set of instructions) **135**, and applications (or set of instructions) **136**.

[0050] The operating system **126** (e.g., Darwin, RTXC, LINUX, UNIX, OS X, WINDOWS, or an embedded operating system such as VxWorks) includes various software components and/or drivers for controlling and managing general system tasks (e.g., memory management, storage device control, power management, etc.) and facilitates communication between various hardware and software components.

[0051] The communication module **128** facilitates communication with other devices over one or more external ports **124** and also includes various software components for handling data received by the RF circuitry **108** and/or the external port **124**. The external port **124** (e.g., Universal Serial Bus (USB), FIREWIRE, etc.) is adapted for coupling directly to other devices or indirectly over a network (e.g., the Internet, wireless LAN, etc.). In some embodiments, the external port is a multi-pin (e.g., 30-pin) connector that is the same as, or similar to and/or compatible with the 30-pin connector used on iPod (trademark of Apple Computer, Inc.) devices.

[0052] The contact/motion module **130** may detect contact with the touch screen **112** (in conjunction with the display controller **156**) and other touch sensitive devices (e.g., a touchpad or physical click wheel). The contact/motion module **130** includes various software components for performing various operations related to detection of contact, such as determining if contact has occurred, determining if there is movement of the contact and tracking the movement across the touch screen **112**, and determining if the contact has been broken (i.e., if the contact has ceased). Determining movement of the point of contact may include determining speed (magnitude), velocity (magnitude and direction), and/or an acceleration (a change in magnitude and/or direction) of the point of contact. These operations may be applied to single contacts (e.g., one finger contacts) or to multiple simultaneous contacts (e.g., "multitouch"/multiple finger contacts). In some embodiments, the contact/motion module **130** and the display controller **156** also detects contact on a touchpad. In some embodiments, the contact/motion module **130** and the controller **160** detects contact on a click wheel.

[0053] The graphics module **132** includes various known software components for rendering and displaying graphics on the touch screen **112**, including components for changing the intensity of graphics that are displayed. As used herein, the term "graphics" includes any object that can be displayed to a user, including without limitation text, web pages, icons (such as user-interface objects including soft keys), digital images, videos, animations and the like.

[0054] The text input module **134**, which may be a component of graphics module **132**, provides soft keyboards for entering text in various applications (e.g., contacts **137**, e-mail **140**, IM **141**, blogging **142**, browser **147**, and any other application that needs text input).

[0055] The GPS module **135** determines the location of the device and provides this information for use in various applications (e.g., to telephone **138** for use in location-based dialing, to camera **143** and/or blogger **142** as picture/video metadata, and to applications that provide location-based services such as weather widgets, local yellow page widgets, and map/navigation widgets).

[0056] The applications **136** may include the following modules (or sets of instructions), or a subset or superset thereof:

[0057] a contacts module **137** (sometimes called an address book or contact list);

[0058] a telephone module **138**;

[0059] a video conferencing module **139**;

[0060] an e-mail client module **140**;

[0061] an instant messaging (IM) module **141**;

[0062] a blogging module **142**;

[0063] a camera module **143** for still and/or video images;

[0064] an image management module **144**;

[0065] a video player module **145**;

[0066] a music player module **146**;

[0067] a browser module **147**;

[0068] a calendar module **148**;

[0069] widget modules **149**, which may include weather widget **149-1**, stocks widget **149-2**, calculator widget **149-3**, alarm clock widget **149-4**, dictionary widget **149-5**, and other widgets obtained by the user, as well as user-created widgets **149-6**;

[0070] widget creator module **150** for making user-created widgets **149-6**;

[0071] search module **151**;

[0072] video and music player module **152**, which merges video player module **145** and music player module **146**;

[0073] notes module **153**;

[0074] map module **154**; and/or

[0075] online video module **155**.

[0076] Examples of other applications **136** that may be stored in memory **102** include other word processing applications, JAVA-enabled applications, encryption, digital rights management, voice recognition, and voice replication.

[0077] In conjunction with touch screen **112**, display controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the contacts module **137** may be used to manage an address book or contact list, including: adding name(s) to the address book; deleting name(s) from the address book; associating telephone number(s), e-mail address(es), physical address(es) or other information with a name; associating an image with a name; categorizing and sorting names; providing telephone numbers or e-mail addresses to initiate and/or facilitate communications by telephone **138**, video conference **139**, e-mail **140**, or IM **141**; and so forth.

7

[0078] In conjunction with RF circuitry 108, audio circuitry 110, speaker 111, microphone 113, touch screen 112, display controller 156, contact module 130, graphics module 132, and text input module 134, the telephone module 138 may be used to enter a sequence of characters corresponding to a telephone number, access one or more telephone numbers in the address book 137, modify a telephone number that has been entered, dial a respective telephone number, conduct a conversation and disconnect or hang up when the conversation is completed. As noted above, the wireless communication may use any of a plurality of communications standards, protocols and technologies.

[0079] In conjunction with RF circuitry 108, audio circuitry 110, speaker 111, microphone 113, touch screen 112, display controller 156, optical sensor 164, optical sensor controller 158, contact module 130, graphics module 132, text input module 134, contact list 137, and telephone module 138, the videoconferencing module 139 may be used to initiate, conduct, and terminate a video conference between a user and one or more other participants.

[0080] In conjunction with RF circuitry 108, touch screen 112, display controller 156, contact module 130, graphics module 132, and text input module 134, the e-mail client module 140 may be used to create, send, receive, and manage e-mail. In conjunction with image management module 144, the e-mail module 140 makes it very easy to create and send e-mails with still or video images taken with camera module 143.

[0081] In conjunction with RF circuitry 108, touch screen 112, display controller 156, contact module 130, graphics module 132, and text input module 134, the instant messaging module 141 may be used to enter a sequence of characters corresponding to an instant message, to modify previously entered characters, to transmit a respective instant message (for example, using a Short Message Service (SMS) or Multimedia Message Service (MMS) protocol for telephony-based instant messages or using XMPP, SIMPLE, or IMPS for Internet-based instant messages), to receive instant messages and to view received instant messages. In some embodiments, transmitted and/or received instant messages may include graphics, photos, audio files, video files and/or other attachments as are supported in a MMS and/or an Enhanced Messaging Service (EMS). As used herein, "instant messaging" refers to both telephony-based messages (e.g., messages sent using SMS or MMS) and Internet-based messages (e.g., messages sent using XMPP, SIMPLE, or IMPS).

[0082] In conjunction with RF circuitry 108, touch screen 112, display controller 156, contact module 130, graphics module 132, text input module 134, image management module 144, and browsing module 147, the blogging module 142 may be used to send text, still images, video, and/or other graphics to a blog (e.g., the user's blog).

[0083] In conjunction with touch screen 112, display controller 156, optical sensor(s) 164, optical sensor controller 158, contact module 130, graphics module 132, and image management module 144, the camera module 143 may be used to capture still images or video (including a video stream) and store them into memory 102, modify characteristics of a still image or video, or delete a still image or video from memory 102.

[0084] In conjunction with touch screen 112, display controller 156, contact module 130, graphics module 132, text input module 134, and camera module 143, the image management module 144 may be used to arrange, modify or otherwise manipulate, label, delete, present (e.g., in a digital slide show or album), and store still and/or video images.

[0085] In conjunction with touch screen 112, display controller 156, contact module 130, graphics module 132, audio circuitry 110, and speaker 111, the video player module 145 may be used to display, present or otherwise play back videos (e.g., on the touch screen or on an external, connected display via external port 124).

[0086] In conjunction with touch screen 112, display system controller 156, contact module 130, graphics module 132, audio circuitry 110, speaker 111, RF circuitry 108, and browser module 147, the music player module 146 allows the user to download and play back recorded music and other sound files stored in one or more file formats, such as MP3 or AAC files. In some embodiments, the device 100 may include the functionality of an MP3 player, such as an iPod (trademark of Apple Computer, Inc.).

[0087] In conjunction with RF circuitry 108, touch screen 112, display system controller 156, contact module 130, graphics module 132, and text input module 134, the browser module 147 may be used to browse the Internet, including searching, linking to, receiving, and displaying web pages or portions thereof, as well as attachments and other files linked to web pages.

[0088] In conjunction with RF circuitry 108, touch screen 112, display system controller 156, contact module 130, graphics module 132, text input module 134, e-mail module 140, and browser module 147, the calendar module 148 may be used to create, display, modify, and store calendars and data associated with calendars (e.g., calendar entries, to do lists, etc.).

[0089] In conjunction with RF circuitry 108, touch screen 112, display system controller 156, contact module 130, graphics module 132, text input module 134, and browser module 147, the widget modules 149 are mini-applications that may be downloaded and used by a user (e.g., weather widget 149-1, stocks widget 149-2, calculator widget 149-3, alarm clock widget 149-4, and dictionary widget 149-5) or created by the user (e.g., user-created widget 149-6). In some embodiments, a widget includes an HTML (Hypertext Markup Language) file, a CSS (Cascading Style Sheets) file, and a JavaScript file. In some embodiments, a widget includes an XML (Extensible Markup Language) file and a JavaScript file (e.g., Yahoo! Widgets).

[0090] In conjunction with RF circuitry 108, touch screen 112, display system controller 156, contact module 130, graphics module 132, text input module 134, and browser module 147, the widget creator module 150 may be used by a user to create widgets (e.g., turning a user-specified portion of a web page into a widget).

[0091] In conjunction with touch screen 112, display system controller 156, contact module 130, graphics module 132, and text input module 134, the search module 151 may be used to search for text, music, sound, image, video, and/or other files in memory 102 that match one or more search criteria (e.g., one or more user-specified search terms).

[0092] In conjunction with touch screen 112, display controller 156, contact module 130, graphics module 132, and text input module 134, the notes module 153 may be used to create and manage notes, to do lists, and the like.

[0093] In conjunction with RF circuitry 108, touch screen 112, display system controller 156, contact module 130, graphics module 132, text input module 134, GPS module 135, and browser module 147, the map module 154 may be

used to receive, display, modify, and store maps and data associated with maps (e.g., driving directions; data on stores and other points of interest at or near a particular location; and other location-based data).

[0094] In conjunction with touch screen **112**, display system controller **156**, contact module **130**, graphics module **132**, audio circuitry **110**, speaker **111**, RF circuitry **108**, text input module **134**, e-mail client module **140**, and browser module **147**, the online video module **155** allows the user to access, browse, receive (e.g., by streaming and/or download), play back (e.g., on the touch screen or on an external, connected display via external port **124**), send an e-mail with a link to a particular online video, and otherwise manage online videos in one or more file formats, such as H.264. In some embodiments, instant messaging module **141**, rather than e-mail client module **140**, is used to send a link to a particular online video. Embodiments of user interfaces and associated processes using online video module **155** are described further below.

[0095] Each of the above identified modules and applications correspond to a set of instructions for performing one or more functions described above. These modules (i.e., sets of instructions) need not be implemented as separate software programs, procedures or modules, and thus various subsets of these modules may be combined or otherwise re-arranged in various embodiments. For example, video player module **145** may be combined with music player module **146** into a single module (e.g., video and music player module **152**, FIG. 1B). In some embodiments, memory **102** may store a subset of the modules and data structures identified above. Furthermore, memory **102** may store additional modules and data structures not described above.

[0096] In some embodiments, the device **100** is a device where operation of a predefined set of functions on the device is performed exclusively through a touch screen **112** and/or a touchpad. By using a touch screen and/or a touchpad as the primary input/control device for operation of the device **100**, the number of physical input/control devices (such as push buttons, dials, and the like) on the device **100** may be reduced.

[0097] The predefined set of functions that may be performed exclusively through a touch screen and/or a touchpad include navigation between user interfaces. In some embodiments, the touchpad, when touched by the user, navigates the device **100** to a main, home, or root menu from any user interface that may be displayed on the device **100**. In such embodiments, the touchpad may be referred to as a "menu button." In some other embodiments, the menu button may be a physical push button or other physical input/control device instead of a touchpad.

[0098] FIG. **2** illustrates a portable multifunction device **100** having a touch screen **112** in accordance with some embodiments. The touch screen may display one or more graphics within user interface (UI) **200**. In this embodiment, as well as others described below, a user may select one or more of the graphics by making contact or touching the graphics, for example, with one or more fingers **202** (not drawn to scale in the figure). In some embodiments, selection of one or more graphics occurs when the user breaks contact with the one or more graphics. In some embodiments, the contact may include a gesture, such as one or more taps, one or more swipes (from left to right, right to left, upward and/or downward) and/or a rolling of a finger (from right to left, left to right, upward and/or downward) that has made contact with the device **100**. In some embodiments, inadvertent contact

with a graphic may not select the graphic. For example, a swipe gesture that sweeps over an application icon may not select the corresponding application when the gesture corresponding to selection is a tap.

[0099] The device **100** may also include one or more physical buttons, such as "home" or menu button **204**. As described previously, the menu button **204** may be used to navigate to any application **136** in a set of applications that may be executed on the device **100**. Alternatively, in some embodiments, the menu button is implemented as a soft key in a GUI in touch screen **112**.

[0100] In one embodiment, the device **100** includes a touch screen **112**, a menu button **204**, a push button **206** for powering the device on/off and locking the device, volume adjustment button(s) **208**, a Subscriber Identity Module (SIM) card slot **210**, a head set jack **212**, and a docking/charging external port **124**. The push button **206** may be used to turn the power on/off on the device by depressing the button and holding the button in the depressed state for a predefined time interval; to lock the device by depressing the button and releasing the button before the predefined time interval has elapsed; and/or to unlock the device or initiate an unlock process. In an alternative embodiment, the device **100** also may accept verbal input for activation or deactivation of some functions through the microphone **113**.

[0101] Attention is now directed towards embodiments of user interfaces ("UI") and associated processes that may be implemented on a portable multifunction device **100**.

[0102] FIG. **3** illustrates an exemplary user interface for unlocking a portable electronic device in accordance with some embodiments. In some embodiments, user interface **300** includes the following elements, or a subset or superset thereof:

[0103]   Unlock image **302** that is moved with a finger gesture to unlock the device;

[0104]   Arrow **304** that provides a visual cue to the unlock gesture;

[0105]   Channel **306** that provides additional cues to the unlock gesture;

[0106]   Time **308**;

[0107]   Day **310**;

[0108]   Date **312**; and

[0109]   Wallpaper image **314**.

[0110] In some embodiments, the device detects contact with the touch-sensitive display (e.g., a user's finger making contact on or near the unlock image **302**) while the device is in a user-interface lock state. The device moves the unlock image **302** in accordance with the contact. The device transitions to a user-interface unlock state if the detected contact corresponds to a predefined gesture, such as moving the unlock image across channel **306**. Conversely, the device maintains the user-interface lock state if the detected contact does not correspond to the predefined gesture. As noted above, processes that use gestures on the touch screen to unlock the device are described in U.S. patent application Ser. Nos. 11/322,549, "Unlocking A Device By Performing Gestures On An Unlock Image," filed Dec. 23, 2005, and 11/322, 550, "Indication Of Progress Towards Satisfaction Of A User Input Condition," filed Dec. 23, 2005, which are hereby incorporated by reference in their entirety.

[0111] FIGS. **4A** and **4B** illustrate exemplary user interfaces for a menu of applications on a portable multifunction device in accordance with some embodiments. In some

embodiments, user interface **400**A includes the following elements, or a subset or superset thereof:

[0112]  Signal strength indicator(s) **402** for wireless communication(s), such as cellular and Wi-Fi signals;

[0113]  Time **404**;

[0114]  Battery status indicator **406**;

[0115]  Tray **408** with icons for frequently used applications, such as:

[0116]  Phone **138**, which may include an indicator **414** of the number of missed calls or voicemail messages;

[0117]  E-mail client **140**, which may include an indicator **410** of the number of unread e-mails;

[0118]  Browser **147**; and

[0119]  Music player **146**; and

[0120]  Icons for other applications, such as:

[0121]  IM **141**;

[0122]  Image management **144**;

[0123]  Camera **143**;

[0124]  Video player **145**;

[0125]  Weather **149**-1;

[0126]  Stocks **149**-2;

[0127]  Blog **142**;

[0128]  Calendar **148**;

[0129]  Calculator **149**-3;

[0130]  Alarm clock **149**-4;

[0131]  Dictionary **149**-5; and

[0132]  User-created widget **149**-6.

[0133]  In some embodiments, user interface **400**B includes the following elements, or a subset or superset thereof:

[0134]  **402**, **404**, **406**, **141**, **148**, **144**, **143**, **149**-3, **149**-2, **149**-1, **149**-4, **410**, **414**, **138**, **140**, and **147**, as described above;

[0135]  Map **154**;

[0136]  Notes **153**;

[0137]  Settings **412**, which provides access to settings for the device **100** and its various applications **136**, as described further below;

[0138]  Video and music player module **152**, also referred to as iPod (trademark of Apple Computer, Inc.) module **152**; and

[0139]  Online video module **155**, also referred to as YouTube (trademark of Google, Inc.) module **155**.

[0140]  In some embodiments, UI **400**A or **400**B displays all of the available applications **136** on one screen so that there is no need to scroll through a list of applications (e.g., via a scroll bar). In some embodiments, as the number of applications increase, the icons corresponding to the applications may decrease in size so that all applications may be displayed on a single screen without scrolling. In some embodiments, having all applications on one screen and a menu button enables a user to access any desired application with at most two inputs, such as activating the menu button **204** and then activating the desired application (e.g., by a tap or other finger gesture on the icon corresponding to the application).

[0141]  In some embodiments, UI **400**A or **400**B provides integrated access to both widget-based applications and non-widget-based applications. In some embodiments, all of the widgets, whether user-created or not, are displayed in UI **400**A or **400**B. In other embodiments, activating the icon for user-created widget **149**-6 may lead to another UI that contains the user-created widgets or icons corresponding to the user-created widgets.

[0142]  In some embodiments, a user may rearrange the icons in UI **400**A or **400**B, e.g., using processes described in U.S. patent application Ser. No. 11/459,602, "Portable Electronic Device With Interface Reconfiguration Mode," filed Jul. 24, 2006, which is hereby incorporated by reference in its entirety. For example, a user may move application icons in and out of tray **408** using finger gestures.

[0143]  In some embodiments, UI **400**A or **400**B includes a gauge (not shown) that displays an updated account usage metric for an account associated with usage of the device (e.g., a cellular phone account), as described in U.S. patent application Ser. No. 11/322,552, "Account Information Display For Portable Communication Device," filed Dec. 23, 2005, which is hereby incorporated by reference in its entirety.

[0144]  FIGS. **5**A-**5**P illustrate exemplary user interfaces for an online video application for a portable multifunction device in accordance with some embodiments.

[0145]  In some embodiments, a computer-implemented method is performed at a portable electronic device (e.g., **100**) with a touch screen display **112**.

[0146]  The device displays a first list **2330**-1 (FIG. **5**A) of information about online video items in a plurality of lists **2330** of information about online video items. In some embodiments, the plurality of lists of information about online video items include at least two of: a list of information about featured content items (e.g., videos featured by the online video website), a list of information about most recently added content items (e.g., videos most recently added to the online video website), a list of information about most viewed content items (e.g., videos most viewed by other users of the online video website, 2330-1, FIG. **5**A), a list of information about top rated content items (e.g., videos rated by other users of the online video website), a list of information about content items bookmarked by a user of the computing device (e.g., bookmark list **2330**-2, FIG. **5**O), and a list of information about content items viewed by a user of the computing device (e.g., a list with a history of the video played by the user). In some embodiments, a respective list **2330** of information about online video items is displayed in a portrait orientation of the touch screen display. In some embodiments, in response to activation of a time window icon (e.g., all **2390**, today **2392**, or this week **2394** icons in FIG. **5**A) a respective list may be chosen to correspond to a specific time period.

[0147]  The device displays a plurality of icons (e.g., 2332-1, 2332-2, and 2332-3, FIG. **5**A) corresponding to at least some of the plurality of lists of information about online video items. The plurality of icons are displayed at the same time as a list of information about online video items (e.g., list **2330**-1, FIG. **5**A).

[0148]  In some embodiments, the device displays a search icon **2334** that when activated initiates the display of a user interface **2300**R (FIG. **5**N) for searching for online video items.

[0149]  In response to detecting a moving finger gesture **2336** on the first list of information about content items, the device scrolls the first list of information about content items.

[0150]  In response to detecting a stationary finger contact on a first portion **2338** of a row **2340** in the first list of information about online video items, wherein the row contains information about a particular online video item, the device: initiates a request for the particular online video item **2342** from a remote computer (e.g., an online video server for

10

a web site such as www.youtube.com), receives the particular online video item 2342, and plays the particular online video item 2342 (FIG. 5B). In some embodiments, the first portion 2338 of a row includes anywhere in the row except a second portion of the row, such as additional information icon 2344.

[0151]   In some embodiments, the row 2340 has a width, the touch screen 112 has a width and the width of the row is substantially the same as the width of the touch screen display (e.g., at least 90% of the width of the touch screen display). In some embodiments, the touch screen display 112 has an area and the particular online video item 2342 uses substantially all (e.g., at least 90%) of the touch screen display area when the particular online video item is played. In some embodiments, the particular online video item 2342 is played in a landscape orientation of the touch screen display (FIG. 5B).

[0152]   In some embodiments, in response to detecting a finger contact 2346 (FIG. 5B) on the touch screen display while the particular online video item 2342 is playing, the device displays one or more playback controls. In some embodiments, the one or more playback controls comprise a play icon 2304, a pause icon (not shown, which may toggle with the play icon 2304), a sound volume icon 2324, and/or a playback progress bar icon 2310. In some embodiments, displaying one or more playback controls comprises displaying one or more playback controls on top of the particular online video item 2342 (e.g., a semi-transparent "heads-up display", as illustrated in FIG. 5B).

[0153]   In some embodiments, while playing the particular online video item 2342, the device ceases to display the one or more playback controls. In some embodiments, ceasing to display the one or more playback controls comprises fading out the one or more playback controls. In some embodiments, the display of the one or more playback controls is ceased after a predetermined time. In some embodiments, the display of the one or more playback controls is ceased after no contact is detected with the touch screen display for a predetermined time.

[0154]   In some embodiments, in response to detecting a finger contact 2346 on the touch screen display while the particular online video item is playing, the device displays a bookmark icon 2350 that, if activated by another finger contact 2348, bookmarks the particular online video item 2342 (or initiates a process for creating a bookmark for the item).

[0155]   In some embodiments, in response to detecting a finger contact 2346 on the touch screen display while the particular online video item is playing, the device displays a sharing icon 2352 that, if activated by another finger contact 2354, initiates creation of an electronic message to another user that includes a link to the particular online video item. In some embodiments, in response to detecting a finger contact 2346 on the touch screen display while the particular online video item is playing, the device displays a sharing icon 2352 that, if activated by another finger contact 2354, initiates creation of an electronic message to another user that includes an online address (e.g., a URL such as "http://www.youtube.com/watch?v=1xXNoB3t8vM" in FIG. 5E) for the particular online video item. In some embodiments, the electronic message is an email (FIG. 5E). In some embodiments, the electronic message is an instant message, such as an SMS message.

[0156]   In response to detecting a finger contact on a respective icon (e.g., icon 2332-1, FIG. 5A or 2332-2, FIG. 5A) in the plurality of icons, the device displays a corresponding list

(e.g., 2330-1, FIG. 5A or 2330-2, FIG. 5D, respectively) of information about online video items.

[0157]   In some embodiments, in response to detecting a finger contact on a second portion of the row in the first list of information about online video items (e.g., a contact on icon 2344-3, FIG. 5A), the device displays additional information about the particular online video item (e.g., UI 2300G, FIG. 5C). The second portion (e.g., icon 2344) of the row is different from the first portion 2338 of the row (e.g., anywhere else in the row 2340 besides icon 2344). In some embodiments, the additional information about the particular online video item includes information about related online video items 2356 (FIG. 5D). In some embodiments, in response to detecting a finger contact on the second portion of the row, the device displays a bookmark icon 2358 that, if activated by another finger contact 2360, bookmarks the particular online video item (or initiates a process for creating a bookmark). In some embodiments, in response to detecting a finger contact on the second portion of the row, the device displays a sharing icon 2362 that, if activated by another finger contact 2364, initiates creation of an electronic message to another user that includes a link to (or an online address for) the particular online video item (FIG. 5E). In some embodiments, in response to detecting a finger contact on the second portion of the row, the device: (a) displays a bookmark icon 2358 and a sharing icon 2362 if the particular online video item is not bookmarked (FIG. 5C), and (b) displays an enlarged sharing icon 2366 (FIG. 5D) without the bookmark icon if the particular online video item is already bookmarked (FIG. 5D).

[0158]   In some embodiments, the device displays an icon 2368 (FIG. 5A) that when activated initiates the display of: (a) icons corresponding to at least some of the plurality of lists of information about online video items (e.g., 2332-4, 2332-5, 2332-6, FIG. 5F), and (b) a configuration icon (e.g., Edit icon 2370, FIG. 5F) that when activated initiates the display of a user interface 2300K (FIG. 5G) for configuring which icons corresponding to at least some of the plurality of lists are displayed with the first list of information. In some embodiments, after detecting a gesture on the configuration icon 2370, the device: detects a finger-down event 2372 (FIG. 5H) at a first icon in a plurality of icons; detects one or more finger-dragging events 2374 on the touch screen display; moves the first icon on the touch screen display along a path determined by the finger-dragging events until the first icon at least in part overlaps a second icon in the plurality of icons (e.g., in FIG. 5I, "Most Recent" icon partially overlaps "Most Viewed" icon); detects a finger-up event 2376 at the second icon; and visually replaces the second icon with the first icon (e.g., in FIG. 5J, "Most Recent" icon visually replaces the "Most Viewed" icon in FIG. 5I). In some embodiments, while moving the first icon on the touch screen display, the device displays the first icon in a manner visually distinguishable from other icons on the touch screen display (e.g., the "Most Recent" icon is enlarged in FIG. 5I). As shown in FIGS. 5K-5M, an analogous finger down, finger drag, and finger up process may be used to rearrange the icons 2332 (and 2334) that are displayed with the first list of information (e.g., exchanging the positions of the "Most Recent" icon and the "Bookmarks" icon).

[0159]   In some embodiments, in response to detecting a finger contact on a playback completion icon 2314 (FIG. 5B), the device ceases to play the particular online video item 2342, and displays again the first list of information 2330-1

(FIG. **5**A). In some embodiments, the finger contact detected on the playback completion icon comprises a tap gesture.

[0160] A graphical user interface **2300**E (FIG. **5**A) on a portable electronic device **100** with a touch screen display **112** includes: a first list **2330**-1 of information about online video items in a plurality of lists of information about online video items; and a plurality of icons **2332** corresponding to at least some of the plurality of lists of information about online video items. In response to detecting a finger contact on a first portion **2338** of a row **2340** in the first list **2330**-1 of information about online video items, wherein the row contains information about a particular online video item: a request is initiated for the particular online video item **2342** from a remote computer, the particular online video item **2342** is received, and the particular online video item **2342** is played. In some embodiments, in response to detecting a finger contact on a second portion of the row (e.g., additional information icon **2344**) in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, additional information is displayed about the particular online video item (e.g., in UI **2300**G, FIG. **5**C). In response to detecting a finger contact on a respective icon **2332** in the plurality of icons, a corresponding list **2330** of information about online video items is displayed.

[0161] The foregoing description, for purpose of explanation, has been described with reference to specific embodiments. However, the illustrative discussions above are not intended to be exhaustive or to limit the invention to the precise forms disclosed. Many modifications and variations are possible in view of the above teachings. The embodiments were chosen and described in order to best explain the principles of the invention and its practical applications, to thereby enable others skilled in the art to best utilize the invention and various embodiments with various modifications as are suited to the particular use contemplated.

What is claimed is:

**1**. A computer-implemented method, comprising:

at a portable electronic device with a touch screen display,

displaying a first list of information about online video items in a plurality of lists of information about online video items;

displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items;

in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item;

in response to detecting a finger contact on a second portion of the row in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, displaying additional information about the particular online video item; and

in response to detecting a finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

**2**. A computer-implemented method, comprising:

at a portable electronic device with a touch screen display,

displaying a first list of information about online video items in a plurality of lists of information about online video items;

displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items;

in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item; and

in response to detecting a finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

**3**. The computer-implemented method of claim **2**, wherein, in response to detecting a finger contact on a second portion of the row in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, displaying additional information about the particular online video item.

**4**. The computer-implemented method of claim **2**, wherein the plurality of lists of information about online video items include at least two of: a list of information about featured content items, a list of information about most recently added content items, a list of information about most viewed content items, a list of information about top rated content items, a list of information about content items bookmarked by a user of the computing device, and a list of information about content items viewed by a user of the computing device.

**5**. The computer-implemented method of claim **2**, wherein a respective list of information about online video items is displayed in a portrait orientation of the touch screen display.

**6**. The computer-implemented method of claim **2**, wherein the row has a width, the touch screen has a width and the width of the row is substantially the same as the width of the touch screen display.

**7**. The computer-implemented method of claim **2**, wherein the touch screen display has an area and the particular online video item uses substantially all of the touch screen display area when the particular online video item is played.

**8**. The computer-implemented method of claim **2**, including displaying a search icon that when activated initiates the display of a user interface for searching for online video items.

**9**. The computer-implemented method of claim **2**, including displaying an icon that when activated initiates the display of:

icons corresponding to at least some of the plurality of lists of information about online video items, and

a configuration icon that when activated initiates the display of a user interface for configuring which icons corresponding to at least some of the plurality of lists are displayed with the first list of information.

**10**. The computer-implemented method of claim **9**, wherein

after detecting a gesture on the configuration icon,

detecting a finger-down event at a first icon in a plurality of icons;

detecting one or more finger-dragging events on the touch screen display;

moving the first icon on the touch screen display along a path determined by the finger-dragging events until the first icon at least in part overlaps a second icon in the plurality of icons;

detecting a finger-up event at the second icon; and

visually replacing the second icon with the first icon.

**11**. The computer-implemented method of claim **10**, wherein while moving the first icon on the touch screen display, displaying the first icon in a manner visually distinguishable from other icons on the touch screen display.

**12**. The computer-implemented method of claim **2**, wherein the particular online video item is played in a landscape orientation of the touch screen display.

**13**. The computer-implemented method of claim **2**, wherein

in response to detecting a finger contact on the touch screen display while the particular online video item is playing, displaying one or more playback controls.

**14**. The computer-implemented method of claim **13**, wherein the one or more playback controls comprise a play icon, a pause icon, a sound volume icon, and/or a playback progress bar icon.

**15**. The computer-implemented method of claim **13**, wherein displaying one or more playback controls comprises displaying one or more playback controls on top of the particular online video item.

**16**. The computer-implemented method of claim **13**, including, while playing the particular online video item, ceasing to display the one or more playback controls.

**17**. The computer-implemented method of claim **16**, wherein ceasing to display the one or more playback controls comprises fading out the one or more playback controls.

**18**. The computer-implemented method of claim **16**, wherein the display of the one or more playback controls is ceased after a predetermined time.

**19**. The computer-implemented method of claim **16**, wherein the display of the one or more playback controls is ceased after no contact is detected with the touch screen display for a predetermined time.

**20**. The computer-implemented method of claim **2**, wherein

in response to detecting a finger contact on the touch screen display while the particular online video item is playing, displaying a bookmark icon that, if activated by another finger contact, bookmarks the particular online video item.

**21**. The computer-implemented method of claim **2**, wherein

in response to detecting a finger contact on the touch screen display while the particular online video item is playing, displaying a sharing icon that, if activated by another finger contact, initiates creation of an electronic message to another user that includes a link to the particular online video item.

**22**. The computer-implemented method of claim **2**, wherein

in response to detecting a finger contact on the touch screen display while the particular online video item is playing, displaying a sharing icon that, if activated by another finger contact, initiates creation of an electronic message to another user that includes an online address for the particular online video item.

**23**. The computer-implemented method of claim **3**, wherein the additional information about the particular online video item includes information about related online video items.

**24**. The computer-implemented method of claim **3**, wherein

in response to detecting a finger contact on the second portion of the row, displaying a bookmark icon that, if activated by another finger contact, bookmarks the particular online video item.

**25**. The computer-implemented method of claim **3**, wherein

in response to detecting a finger contact on the second portion of the row, displaying a sharing icon that, if activated by another finger contact, initiates creation of an electronic message to another user that includes a link to or an online address for the particular online video item.

**26**. The computer-implemented method of claim **3**, wherein

in response to detecting a finger contact on the second portion of the row,

displaying a bookmark icon and a sharing icon if the particular online video item is not bookmarked, and

displaying an enlarged sharing icon without the bookmark icon if the particular online video item is already bookmarked.

**27**. The computer-implemented method of claim **2**, wherein

in response to detecting a finger contact on a playback completion icon,

ceasing to play the particular online video item, and

displaying again the first list of information.

**28**. The computer-implemented method of claim **27**, wherein the finger contact detected on the playback completion icon comprises a tap gesture.

**29**. A graphical user interface on a portable electronic device with a touch screen display, comprising:

a first list of information about online video items in a plurality of lists of information about online video items; and

a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

wherein:

in response to detecting a finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

a request is initiated for the particular online video item from a remote computer,

the particular online video item is received, and

the particular online video item is played; and

in response to detecting a finger contact on a respective icon in the plurality of icons, a corresponding list of information about online video items is displayed.

**30**. The graphical user interface of claim **29**, wherein:

in response to detecting a finger contact on a second portion of the row in the first list of information about online

13

video items, wherein the second portion of the row is different from the first portion of the row, additional information is displayed about the particular online video item.

**31**. A portable computing device, comprising:

a touch screen display;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:

instructions for displaying a first list of information about online video items in a plurality of lists of information about online video items;

instructions for displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

instructions for, in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items;

instructions for, in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item; and

instructions for, in response to detecting a finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

**32**. A computer readable storage medium storing one or more programs, the one or more programs comprising instructions, which when executed by a portable computing device with a touch screen display, cause the device to:

display a first list of information about online video items in a plurality of lists of information about online video items;

display a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a moving finger gesture on the first list of information about content items, scroll the first list of information about content items;

in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiate a request for the particular online video item from a remote computer,

receive the particular online video item, and

play the particular online video item; and

in response to detecting a finger contact on a respective icon in the plurality of icons, display a corresponding list of information about online video items.

**33**. A portable computing device with a touch screen display, comprising:

means for displaying a first list of information about online video items in a plurality of lists of information about online video items;

means for displaying a plurality of icons corresponding to at least some of the plurality of lists of information about online video items;

means for, in response to detecting a moving finger gesture on the first list of information about content items, scrolling the first list of information about content items;

means for, in response to detecting a stationary finger contact on a first portion of a row in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer,

receiving the particular online video item, and

playing the particular online video item; and

means for, in response to detecting a finger contact on a respective icon in the plurality of icons, displaying a corresponding list of information about online video items.

\* \* \* \* \*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on November 2, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Mark S. Davies*
Mark S. Davies
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 10,988 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Mark S. Davies*
Mark S. Davies
*Counsel for Appellants*